Citation Nr: 1755110 
Decision Date: 11/30/17 Archive Date: 12/07/17

DOCKET NO. 11-28 206 ) DATE
 )
 )


On appeal from the
Department of Veterans Affairs Regional Office in New York, New York
 
 
THE ISSUES
 
1. Entitlement to service connection for hypertension on a direct basis.
 
2. What evaluation is warranted for hypertension from April 17, 2002? 
 
 
REPRESENTATION
 
Appellant represented by: Disabled American Veterans
 
 
WITNESS AT HEARING ON APPEAL
 
Appellant
 
 

ATTORNEY FOR THE BOARD
 
Mary E. Rude, Counsel
 
 
INTRODUCTION
 
The Veteran had active service from June 1967 to June 1969.
 
This matter arises before the Board of Veterans' Appeals (Board) from a July 2009 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in New York, New York. In August 2012, the Veteran attended a Travel Board hearing before the undersigned. In June 2014, the case was remanded for further development.
 
 
FINDINGS OF FACT
 
1. The preponderance of the evidence is against finding hypertension that was incurred or aggravated during the Veteran's active duty service or that it became compensably disabling within a year after separation from active duty.
 
2. Throughout the pendency of the appeal, the Veteran's hypertension has not been manifested by blood pressure readings with a diastolic pressure of predominantly 100 or more, systolic pressure of predominantly 160 or more; or by a history of diastolic pressure that was predominantly 100 or more.
 
 
CONCLUSIONS OF LAW
 
1. Hypertension was not incurred or aggravated in service, and it may not be presumed to have been so incurred. 38 U.S.C. §§ 1101, 1110, 1112, 1113, 1137, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.159, 3.303, 3.304, 3.307, 3.309 (2017).
 
2. The criteria for a compensable initial disability rating for hypertension have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 4.7, 4.104, Diagnostic Code 7101 (2017).
 
 
REASONS AND BASES FOR FINDINGS AND CONCLUSIONS
 
With respect to the Veteran's claims, VA has met all statutory and regulatory notice and duty to assist provisions. See 38 U.S.C. §§ 5100, 5102, 5103, 5103A, 5106, 5107, 5126 (2012); 38 C.F.R. §§ 3.102, 3.156(a), 3.159, 3.326 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). The Board finds there has been substantial compliance with its June 2014 remand directives. See D'Aries v. Peake, 22 Vet. App. 97, 105 (2008). 
 
Service Connection Direct Basis
 
Although the Veteran has already been granted entitlement to service connection for hypertension secondary to his service-connected posttraumatic stress disorder in a July 2009 rating decision, he contends that service connection is warranted on a direct basis for this disorder. See 38 C.F.R. §§ 3.303, 3.304, 3.310 (2017).
 
In an October 2003 statement, the Veteran wrote that he first became aware of his hypertension when he was in his late twenties. He indicated that his hypertension may have begun due to stress while he was in Vietnam. In a September 2005 statement, the Veteran wrote that he believed posttraumatic stress disorder was the cause of his hypertension. At an April 2008 RO hearing, the Veteran stated that he had been on blood pressure medication since he was 25 or 28.
 
In an August 2009 statement, the Veteran wrote that he did not have high blood pressure prior to service or upon induction. He wrote that he was borderline hypertensive at separation from service, which was brought on by posttraumatic stress disorder.

Service connection may be granted for a disability resulting from a disease or injury incurred in or aggravated by active service. 38 U.S.C. § 1110; 38 C.F.R. § 3.303(a). To establish entitlement to service-connected compensation benefits, a veteran must show: (1) the existence of a present disability; (2) in-service incurrence or aggravation of a disease or injury; and (3) a causal relationship between the present disability and the disease or injury incurred or aggravated during service. Holton v. Shinseki, 557 F.3d 1362, 1366 (Fed. Cir. 2010).
 
Where a veteran served continuously for ninety days or more during a period of war, or during peacetime service after December 31, 1946, and hypertension becomes manifest to a degree of 10 percent within one year from the date of termination of active duty, such disease shall be presumed to have been incurred in service, even though there is no evidence of such disease during the period of service. This presumption is rebuttable by affirmative evidence to the contrary. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309. 
 
The Board has reviewed all of the medical evidence, but finds that the preponderance of the probative evidence does not indicate that service connection for hypertension on a direct basis is warranted.
 
While there is some indication that the Veteran may have had elevated blood pressure prior to entrance into service, including the finding of the October 2008 VA examiner, the Veteran was not diagnosed with hypertension prior to service or at induction into service, and there is no clear and unmistakable evidence that hypertension preexisted the Veteran's service. As such the appellant is presumed to have entered service without hypertension. 38 U.S.C. § 1111 (2012); 38 C.F.R. § 3.304(b) (A veteran will be considered to have been in sound condition when enrolled for service, except for defects and disorders noted at entrance into service, or where clear and unmistakable evidence demonstrates that an injury or disease existed prior to service.). 

Under VA regulations, the term hypertension means that the diastolic blood pressure is predominantly 90 or greater and systolic blood pressure is predominantly 160 or greater. 38 C.F.R. § 4.104, Diagnostic Code 7101, Note (1) (2017). In this case, the Veteran did not have hypertension prior to service, nor was he diagnosed with hypertension while still in service.
 
At the Veteran's June 1967 entrance examination, his blood pressure was 130/80, i.e., his blood pressure did not have hypertension at enlistment. On his April 1969 separation examination, his blood pressure was 140/86. On his April 1969 Report of Medical History, the Veteran marked "no" for a history of high blood pressure.
 
There is also no evidence that hypertension was compensably disabling within a year of separation from active duty. Rather, the Veteran's private medical records show elevated blood pressure readings since 1994, which is approximately 25 years after separation from service.
 
The most probative medical opinion on the question of whether the Veteran's current hypertension could be related to any event or injury is the April 2016 VA examination report and opinion. At that examination a VA medical opinion was obtained from a physician who reviewed the claims file and performed an in-person examination of the Veteran. The examiner discussed the Veteran's medical history, and stated that the appellant did not have hypertension prior to service, as he did not meet the criteria for a hypertension diagnosis during his entrance examination or during service. She wrote that there was no evidence to suggest the onset of hypertension during service, noting that the Veteran was initially diagnosed with hypertension 15 years after military service. She concluded that it was less likely than not that the Veteran hypertension was incurred in or caused by an in-service injury, event, or illness.
 
The Board finds the April 2016 opinion to be highly probative evidence, as it was written after a competent medical professional reviewed the Veteran's complete medical records and claims file and performed an in-person examination. The examiner provided an adequate rationale, and the facts discussed by the examiner accurately reflect the medical evidence of record. See Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008) (the probative value of a medical opinion comes from its reasoning); see also Prejean v. West, 13 Vet. App. 444, 448-9 (2000) (noting that factors for assessing the probative value of a medical opinion are the physician's access to the claims file and the thoroughness and detail of the opinion). 
 
There are no contradictory medical opinions to the findings of the April 2016 VA examiner, and the Veteran has not submitted any medical evidence indicating that his hypertension had its onset during or that it was compensably disabling within one year of separation from active duty, or that it is related to any event or injury in service. An April 2008 letter from Dr. M.P. stated that the Veteran had long term hypertension which developed a few years after his military service. A May 2008 statement from Dr. O.K. stated that she believed there was a "possible and probably connection" between the Veteran's posttraumatic stress disorder and his hypertension, both of which were "connected to his service in Vietnam."
 
The Board does not find that these letters provide any probative evidence indicating that the Veteran's hypertension is caused by an in-service injury, event, or illness separate from his posttraumatic stress disorder. The letter from Dr. O.K. indicates that both posttraumatic stress disorder and hypertension were connected to his service in Vietnam, but the letter was written in order to establish that the Veteran's hypertension was related to his posttraumatic stress disorder, and service-connected for hypertension on that theory has already been granted. The letter does not indicate any reason why hypertension is related to the Veteran's service which is separate from the context of it being related to his posttraumatic stress disorder. The letter from Dr. M.P. does not actually indicate that the Veteran's hypertension is related to service, and holds no probative value towards this question.
 
While the Veteran may sincerely believe that he incurred hypertension in service, his testimony on the etiology of his condition or its diagnosis is less probative than the findings of the VA examiner. Lay evidence can be competent and sufficient to establish a diagnosis of a condition when (1) a layperson is competent to identify the medical condition, (2) the layperson is reporting a contemporaneous medical diagnosis, or (3) lay testimony describing symptoms at the time supports a later diagnosis by a medical professional. See Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007); Layno v. Brown, 6 Vet. App. 465, 470 (1994). In this case, the Veteran's belief that he incurred hypertension in service is outweighed by the April 2016 medical opinion of the VA examiner and the findings on examination at separation from service. 
 
The Board notes that the Veteran has asserted that his hypertension should be granted direct service connection because he is unhappy that the July 2009 rating decision assigned a noncompensable evaluation after deducting the preaggravation level of his hypertension disability from his aggravated disability, suggesting that if service connection had been granted on a direct basis, he might be entitled to a compensable rating. As is discussed further below, even without deducting any preaggravation baseline from the Veteran's hypertension levels, the Board finds that a compensable rating for hypertension is not warranted, regardless of whether hypertension had been granted on a direct or secondary basis.
 
The evidence preponderates against finding entitlement to service connection for hypertension on a direct basis. The preponderance of the competent and probative medical evidence shows that the Veteran's hypertension was not incurred in service or related to any event in service, and hypertension was not compensably disabling within one year of the Veteran's separation from active duty. The preponderance of the probative and competent evidence therefore weighs against the claim, and entitlement to service connection on a direct basis is denied. 
 
In reaching this determination, the Board has considered the doctrine of reasonable doubt; however, as the preponderance of the evidence is against the appellant's claim, the doctrine is not for application. See 38 U.S.C. § 5107(b); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 
 
Increased Rating
 
The Veteran contends that his service-connected hypertension warrants a compensable initial rating. The Veteran has submitted written statements describing how he has struggled to control his blood pressure, and that he has frequently had high spikes in pressure, especially when he is experiencing great stress from posttraumatic stress disorder or his medication is not effective.
 
At the August 2012 Board hearing, the Veteran stated that he believed the rating criteria should apply to the blood pressure readings a person would have without medication. The Veteran stated that for ten days he stopped taking his blood pressure medication, and his blood pressure readings immediately became much higher, to the point where it became dangerous.
 
Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule), found in 38 C.F.R. Part 4 (2017). The Board attempts to determine the extent to which the Veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life and is based, as far as practicable, on average impairment of earning capacity in civil occupations. 38 U.S.C. § 1155; 38 C.F.R. §§ 4.41, 4.10 (2017). 
 
The Veteran's entire history is to be considered when making disability evaluations. See generally 38 C.F.R. § 4.1; Schafrath v. Derwinski, 1 Vet. App. 589 (1995). Where entitlement to compensation already has been established and an increase in the disability rating is at issue, it is the present level of disability that is or primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Where the question for consideration is the propriety of the initial rating assigned, evaluation of the medical evidence since the effective date of the grant of service connection to consider the appropriateness of a "staged rating" (i.e., assignment of different ratings for distinct periods of time, based on the facts found) is required. See Fenderson v. West, 12 Vet. App. 199, 126 (1999); see also Hart v. Mansfield, 21 Vet.App. 505 (2007).
 
Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. When there is an approximate balance of positive and negative evidence regarding the merits of an issue material to the determination of the matter, the benefit of the doubt in resolving each such issue shall be given to the claimant. 38 U.S.C. § 5107(b); 38 C.F.R. §§ 3.102, 4.3 (2017).
 
The Veteran's hypertension is evaluated under 38 C.F.R. § 4.104, Diagnostic Code 7101, which provides a 10 percent evaluation for hypertension with diastolic pressure predominantly 100 or more, or; systolic pressure predominantly 160 or more, or; minimum elevation for an individual with a history of diastolic pressure predominantly 100 or more who requires continuous medication for control.
 
The Board has reviewed the Veteran's extensive medical records. While the Veteran does have a history of elevated blood pressure and has at times been found to have systolic pressure of 160 or higher, to warrant a 10 percent rating, the Veteran must demonstrate blood pressure readings of predominantly 100 or more diastolic pressure or predominantly 160 or more systolic pressure. The evidence does not show that the Veteran's blood pressure readings are predominantly of sufficient severity to warrant a compensable initial rating.
 
In January 2002, his blood pressure was 140/80. In March 2002, it was 170/80. His blood pressure was noted to be not well controlled, but the Veteran refused an increase in medication. In April 2002, he had readings of 148/84, 160/80, and 154/80. The Veteran reported that he had "white coat syndrome" and that his blood pressure was "always" much lower at home, around 140/80, and he declined an increase in medication.
 
In May 2003, his blood pressure was 132/70, and in August 2003 it was 138/72. During 2004 and 2005, he had readings of 130/70, 144/70, 130/80, 130/70, 170/90, 150/70, 154/80, and 144/80. In September 2005, the Veteran called his physician to say that he had stopped his medication and his blood pressure had a high of 160 to 180, and that he had felt exhausted. Also that month, he had readings of 158/90 and 156/92. After 45 minutes, his blood pressure was taken again, and was 142/78 and 154/84.
 
In January 2006, the Veteran's blood pressure was 150/80, and he again reported that he was anxious during physician visits and that he monitored his blood pressure at home, where it ranged less than 140/80. Later in 2006, he had blood pressure readings of 150/84, 140/84, 164/80, 160/74, and 136/80. 
 
In June 2007, his blood pressure was 160/80, and the Veteran reported that his ranges at home were 130/80. In June 2007, the Veteran brought in his blood pressure monitor to compare it to the clinic's monitor. His blood pressure monitor showed readings of 177/91 and 173/79, but the clinic's monitor showed 150/84 and 158/86. In July 2007, the Veteran was trained in using a blood pressure monitor. His blood pressure readings were 150/80, 150/78, and 150/80, and then 156/79, 149/88, and 156/76. In August 2007, the Veteran brought in his blood pressure log, which showed systolic blood pressures ranging from 134 to 144 and diastolic blood pressures ranging from 72 to 83. His blood pressures on examination were 146/70, 154/70, and 151/79. In August 2007, it was 138/70. In October 2007, his blood pressure was 138/70 and 140/64. He stated that his blood pressure was usually elevated at doctor's visits and that at home was usually less than 140.
 
In March 2008, his blood pressure was 144/70. In June 2008, he reported home readings of 137-142 systolic and 71-78 diastolic. On examination, his blood pressure was 154/72. Other readings taken at VA evaluations in 2008 were 132/64, 158/78, and 148/72.
 
Since 2009, the Veteran's blood pressure has generally been found to be well-controlled. His blood pressure readings in 2009, 2010, 2011, and 2012 were 136/58, 120/56, 138/62, 132/66, 135/77, 136/71, 156/76, 136/64, 135/60, 162/74, 146/69, 148/70, 144/80, 150/78, 138/72, 130/66, 115/60, and 126/66.
 
The Veteran's home blood pressure readings since this time have also been well under 160/100. In November 2011, the Veteran brought his blood pressure log, which showed his highest reading to be 145/76. In March 2012, the Veteran reported that his blood pressure at home was in the 130s. In April 2012, the Veteran brought his blood pressure log which showed that in March and April 2012, his highest blood pressure was 130/65.
 
From 2013 to 2016, the Veteran's blood pressure readings were 130/65, 130/78, 140/60, 138/60, 146/69, 130/60, 126/55, 136/70, and 139/73. In November 2015, the Veteran reported that his blood pressure at home was good overall, staying under 140/80. His blood pressure on examination was 135/80. In January 2016, the Veteran faxed his home blood pressure readings to his treating nurse, and the blood pressures were mostly in the high 130s to 140s.
 
At a January 2003 VA examination, the Veteran reported that his hypertension was diagnosed at age 38. He stated that he took daily medication. Blood pressure readings were 140/90, 150/80, and 140/80.
 
At an October 2008 VA examination, the Veteran reported that when exposed to stress from posttraumatic stress disorder, his blood pressure spikes up. On examination, his blood pressure was 159/77, 166/70, and 164/80. The examiner noted that at his August 2006 Agent Orange examination, his blood pressure spiked to 166/88.
 
At an April 2016 VA examination, the Veteran reported that he took continuous medication for his hypertension. His blood pressure readings were 148/72, 142/76, and 134/76. The examiner wrote that the Veteran's hypertension did not impact his ability to work.
 
The Veteran has also submitted a series highly elevated blood pressure readings in 2008. He wrote that for 10 days he did not take his hypertension medication, resulting in these elevated blood pressure readings. The Veteran submitted photographs noted to be taken in April 2008 of blood pressure readings of 160/84, 160/90, 175/87, 172/112, 180/145, 177/86, and 162/88.
 
While VA treatment records show the Veteran has on numerous occasions had blood pressure readings with his systolic pressure at 160 or more, including spikes when he is under great stress, he did not predominantly have his readings at that level. Merriam Webster Dictionary defines the term "predominantly" as "for the most part." https://www.merriam-webster.com/dictionary/predominately (last visited Nov. 13, 2017). Less than one fourth of the blood pressure readings show systolic blood pressure of 160 or higher; systolic blood pressure readings are therefore predominantly less than 160. Even if staged ratings are considered for the years of 2002 and 2006-2008, when the Veteran had more elevated blood pressure readings than in subsequent years, his blood pressure readings of 160 or higher do not constitute more than 50 percent of the blood pressure readings for those periods, and a higher rating for separate stages is also not warranted.
 
None of the Veteran's blood pressure readings at VA treatment sessions or VA examinations showed diastolic pressure of 100 or greater. The only diastolic readings of 100 or greater were taken by the Veteran in 2008 when he abruptly stopped his blood pressure medication. After resuming his medication, his diastolic pressure became well below 100.
 
The Veteran has also argued that it is unfair that the rating criteria would be applied to his blood pressure readings after medication, and that VA should consider what his blood pressure would be without this medication. To accentuate his point, the Veteran abstained from his blood pressure medication for 10 days in 2008, endangering his health in order to show that his blood pressure readings became much higher, reaching as high as 180/145. VA's blood pressure regulations are however, intended to evaluate not the "amount of medication required to control [hypertension], but on the level of control that can be achieved." McCarroll v. McDonald, 28 Vet. App. 267, 273 (2016), citing 62 Fed. Reg. 65,207, 65,215 (Dec. 11, 1997). The United States Court of Appeals for Veterans Claims noted in McCarroll that the rating criteria for hypertension include a discussion of the effects of medication and therefore an adjudication which includes consideration of the disability picture when medication is taken is appropriate. Id. If, as here, the Veteran's hypertension is shown to be controlled by medication and is not reflected by blood pressure readings predominantly greater than those specified in the rating criteria, an increased disability rating is not warranted simply by virtue of limited readings in excess of the specified range or the possibility of higher readings if medication were not being taken. 
 
The Veteran also does not have a past history of diastolic pressure that is predominantly 100 or more, which is currently controlled by medication. See Carroll, 28 Vet. App. at 272 (A veteran whose blood pressure is currently controlled by medication is entitled to the minimum rating when he has a history of diastolic pressure predominantly 100 or more.). The Veteran only had diastolic pressure of 100 or greater in 2008 when he stopped taking his blood pressure medication, but even then, the majority of his at-home readings showed diastolic pressure of under 100.
 
For all of these reasons, the predominance of the evidence is against the claim of entitlement to a compensable initial disability rating at any time during the period on appeal, and the benefit-of-the-doubt standard of proof does not apply. See 38 U.S.C. § 5107(b); Gilbert, 1 Vet. App. 49.
 
The question of entitlement to referral for consideration of an extraschedular rating is neither an issue argued by the claimant nor reasonably raised by the record through evidence of the collective impact of the claimant's service-connected disabilities. Yancy v. McDonald, 27 Vet. App. 484, 494 (2016). 
 
 
ORDER
 
Entitlement to service connection for hypertension on a direct basis is denied.
 
Entitlement to an initial compensable rating for hypertension is denied.



____________________________________________
DEREK R. BROWN
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs