Citation Nr: 1826232 
Decision Date: 04/27/18 Archive Date: 05/07/18

DOCKET NO. 00-15 037 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to an initial rating in excess of 30 percent prior to June 17, 2017, and in excess of 70 percent thereafter, for posttraumatic stress disorder (PTSD) with mood disorder.

2. Entitlement to a total disability rating based on individual unemployability (TDIU) under 38 C.F.R. § 4.16(a) due to service-connected PTSD with mood disorder prior to June 17, 2017.

3. Entitlement to a TDIU on an extraschedular basis under 38 C.F.R. § 4.16(b) due to PTSD with mood disorder prior to May 19, 2014.


REPRESENTATION

Veteran represented by: Daniel Krasnegor, Attorney at Law



ATTORNEY FOR THE BOARD

L. Kirscher Strauss, Counsel


INTRODUCTION

The Veteran served on active duty from February 1976 to August 1976.

This matter comes to the Board of Veterans' Appeals (Board) on appeal from an October 2013 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee, which effectuated a Board grant of service connection for PTSD with mood disorder and assigned an initial 30 percent disability rating, effective January 8, 1999.

In March 2017, the Board remanded this matter for additional development. At that time, the Board included the issue of entitlement to a TDIU, noting that the Veteran and his attorney had repeatedly contended that the Veteran was unable to work as a result of his service-connected PTSD. Rice v. Shinseki, 22 Vet. App. 447 (2009).

While the matter was in remand status, in an August 2017 rating decision, the RO increased the rating for PTSD to 70 percent and granted entitlement to a TDIU, both effective June 17, 2017. The United States Court of Appeals for Veterans Claims (Court) has held that a rating decision issued subsequent to a notice of disagreement that grants less than the maximum available rating does not "abrogate the pending appeal." AB v. Brown, 6 Vet. App. 35, 38 (1993). Consequently, the issue of entitlement to an increased rating for PTSD remains in appellate status.

The issue entitlement to a TDIU on an extraschedular basis under 38 C.F.R. § 4.16(b) prior to May 19, 2014 is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).



FINDINGS OF FACT

1. Prior to July 6, 2012, the Veteran's PTSD was manifested by symptoms that produced an occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal.

2. From July 6, 2012 through September 23, 2012, the Veteran's PTSD was manifested by symptoms that produced occupational and social impairment causing reduced reliability and productivity; occupational and social impairment with deficiencies in most areas was not shown during this period.

3. From September 24, 2012, the Veteran's PTSD has been manifested by symptoms causing occupational and social impairment with deficiencies in most areas.

4. The Veteran's PTSD with mood disorder did not result in total social and occupational impairment during any portion of the period on appeal.

5. The Veteran's PTSD with mood disorder precluded substantially gainful employment as of September 24, 2012.


CONCLUSIONS OF LAW

1. The criteria for an initial rating in excess of 30 percent prior to July 6, 2012 have not been met or more nearly approximated. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.126, 4.130, Diagnostic Code 9411 (2017).

2. The criteria for an initial rating of 50 percent, but no greater, have been met for the period from July 6, 2012 through September 23, 2012. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.126, 4.130, Diagnostic Code 9411 (2017).

3. The criteria for a rating of 70 percent, but no greater, have been met for the period from September 24, 2012. 38 U.S.C. §§ 1155, 5110 (2012); 38 C.F.R. §§ 3.102, 4.126, 4.130 Diagnostic Code 9411 (2017).

4. The criteria for a rating in excess of 70 percent have not been met or more nearly approximated at any point during the appeal. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.102, 4.126, 4.130, Diagnostic Code 9411 (2017). 

5. The criteria for entitlement to a TDIU due to service-connected PTSD with mood disorder have been met as of September 24, 2012. 38 U.S.C. §§ 1155, 5107 (2012); 38 C.F.R. §§ 3.340, 3.341, 4.16(a), 4.19, 4.25 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

I. Duties to Notify and to Assist

Neither the Veteran nor his attorney has raised any issues with the duty to notify or duty to assist. See Scott v. McDonald, 789 F.3d 1375, 1381 (Fed. Cir. 2015) (holding that "the Board's obligation to read filings in a liberal manner does not require the Board . . . to search the record and address procedural arguments when the veteran fails to raise them before the Board"); Dickens v. McDonald, 814 F.3d 1359, 1361 (Fed. Cir. 2016) (applying Scott to a duty to assist argument). Thus, the Board finds that VA does not have a duty to assist that was unmet. Sickels v. Shinseki, 643 F.3d 1362 (Fed. Cir. 2011).

II. Initial Rating Claim

Disability ratings are determined by applying the criteria set forth in the VA's Schedule for Rating Disabilities, which is based on the average impairment of earning capacity. Individual disabilities are assigned separate diagnostic codes. 38 U.S.C. § 1155 (2012); 38 C.F.R. § 4.1 (2017). The basis of disability evaluations is the ability of the body as a whole, or of the psyche, or of a system or organ of the body to function under the ordinary conditions of daily life including employment. 38 C.F.R. § 4.10. Where there is a question as to which of two ratings should be applied, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. In determining the severity of a disability, the Board is required to consider the potential application of various other provisions of the regulations governing VA benefits, whether or not they were raised by the Veteran, as well as the entire history of the veteran's disability. 38 C.F.R. §§ 4.1, 4.2; Schafrath v. Derwinski, 1 Vet. App. 589, 595 (1991).

Generally, when an increase in the disability rating is at issue, the present level of disability is of primary concern. Francisco v. Brown, 7 Vet. App. 55, 58 (1994). When the appeal arises from an initial assigned rating, consideration must be given to whether staged ratings should be assigned to reflect entitlement to a higher rating at any point during the pendency of the claim. Fenderson v. West, 12 Vet. App. 119 (1999). Analysis in this decision has therefore been undertaken with consideration of the possibility that different ratings may be warranted for different time periods beyond those already assigned as to the pending claim. 

The Veteran's service-connected PTSD with mood disorder has been rated as 30 percent disabling effective since the date his claim for service connection was received on January 8, 1999 pursuant to 38 C.F.R. § 4.130, Diagnostic Code 9411, which uses the General Rating Formula for Mental Disorders. The disability rating for PTSD with mood disorder was increased to 70 percent, effective June 17, 2017.

A 30 percent evaluation is assigned when there is occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily, with routine behavior, self-care, and conversation normal, due to such symptoms as depressed mood; anxiety; suspiciousness; panic attacks, weekly or less often; chronic sleep impairment; and mild memory loss, such as forgetting names, directions, recent events. 

A 50 percent evaluation is for assignment when there is occupational and social impairment with reduced reliability and productivity due to such symptoms as flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short and long-term memory, e.g., retention of only highly learned material, forgetting to complete tasks; impaired judgment; impaired abstract thinking; disturbances of motivation and mood; difficulty establishing effective work and social relationships. 

A 70 percent evaluation is contemplated for occupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; impaired impulse control, such as unprovoked irritability with periods of violence; spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances, including work or a work-like setting; inability to establish and maintain effective relationships. 

A 100 percent evaluation is warranted when there is evidence of total occupational and social impairment, due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living, including maintenance of minimal personal hygiene; disorientation to time and place; memory loss for names of close relatives, own occupation or name. 38 C.F.R. § 4.130, Diagnostic Code 9411.

When evaluating the level of disability from a mental disorder, the rating agency will consider the extent of social impairment, but shall not assign a rating solely on the basis of social impairment. 38 C.F.R. § 4.126(b). 

When evaluating a mental disorder, the rating agency shall consider the frequency, severity, and duration of psychiatric symptoms, the length of remissions, and the veteran's capacity for adjustment during periods of remission. The rating agency shall assign an evaluation based on all the evidence of record that bears on occupational and social impairment rather than solely on the examiner's assessment of the level of disability at the moment of the examination. 38 C.F.R. § 4.126(a). The symptoms listed in the relevant rating criteria are not intended to constitute an exhaustive list, but rather serve as examples of the type and degree of the symptoms, or their effects, that would justify a particular rating. Mauerhan v. Principi, 16 Vet. App. 436 (2002).

Considering the law relevant to the Veteran's appeal, the Board finds the Veteran's PTSD with mood disorder warrants an initial 30 percent rating since service connection was established, effective January 8, 1999 through July 5, 2012; a 50 percent rating for the period beginning July 6, 2012 through May 18, 2014; and a 70 percent rating from May 19, 2014. At no point during the period on appeal, however, does the evidence indicate the Veteran is entitled to a 100 percent schedular rating for his service-connected PTSD with mood disorder. 

At a November 2002 VA examination, the examining psychiatrist diagnosed depressive disorder. The examiner commented that the Veteran's depression was highly variable but had been in good control on antidepressant medication. See 38 C.F.R. § 4.130; see also Jones v. Shinseki, 26 Vet. App. 56, 63 (2012); McCarroll v. McDonald, 28 Vet. App. 267, 271-73 (2016) (regarding the ameliorative effect of medication). The Veteran described his depression and anger as "mostly in good control," but acknowledged having one or two brief sad spells per week, accompanied by anger, anxiety, and disturbed sleep. He stated his symptoms were significantly relieved when he takes medication. He indicated that these episodes did not generally interfere with his employment and he had not lost any significant time lost from work in the past year except when he changed jobs. He reported working part-time for the past two months as a bus driver. Prior to his part-time employment, he worked for approximately five years on an assembly line for a shipping company, followed by two years on-and-off as a trucking and moving employee. 

Upon examination, the Veteran presented as alert, younger-looking, carefully dressed, and able to sit still. He made good eye contact and was highly verbal, coherent, relevant, and argumentative. He displayed irritability and suppressed anger, but no significant depression or anxiety. Rather, depressed mood was present and manifested by a feeling of helplessness and hopelessness, but this was accompanied by anger and tension and a feeling of compensation for past wrongs. He appeared tense and endorsed feeling stressed out, but had no disorganization or psychotic symptomatology. Cognitive and intellectual functioning was adequate; he was orientated to person, place, and time and sensorium was clear. Rate and flow of speech were relevant and logical with no obscure pattern. He was able to maintain minimal personal hygiene and follow basic activities of daily living. 

The examiner also noted that the following symptomatology was neither observed nor reported: impairment in thought processes or communication; delusions, hallucinations, or inappropriate behavior; significant depression or suicidal or homicidal thoughts or ideations or plans or intent; significant memory loss or impairment of long-term, short-term, or recall; obsessive or ritualistic behavior; significant panic attacks or anxiety spells; or impairment in impulse control.

The Veteran attributed his depression to the recurrent failure to obtain compensation for his disability and pain. Overall, the examiner found that the depression and anxiety symptoms were largely in good control with medication and appeared whenever stressors, such as financial, family conflict, job stress, etc., were overwhelming. The examiner explained that the Veteran had some transient, mild symptoms. The examiner elaborated that the Veteran was able to maintain regular work habits, but had slight impairment in getting along with peers and bosses. The examiner found no significant impairments in social relationships, noting that the Veteran was married and kept good relationships with his children and family members. The examiner considered the Veteran's prognosis for improvement and maintenance of depression to be fair.

VA obtained a medical opinion in February 2009 regarding whether the Veteran had a psychiatric disorder related to his service. The opinion was based on a review of his claims file and did not address his current symptoms. 

In July 2012, the Veteran presented for a VA examination by a clinical psychologist. Following the examination and review of the claims file, the diagnosis included PTSD and rule out personality disorder. Regarding a possible personality disorder, the examiner detailed that the Veteran appeared to have chronic problems coping with frustrations and life circumstances, including his lifetime adult reaction to service stressors, which he had experienced as terrible treatment. Whether more perceived than real, or more real than perceived, the examiner could not differentiate whether those symptoms were attributable to PTSD or possible personality disorder. When it is not possible to separate the effects of a nonservice-connected disorder from those of a service-connected disorder, reasonable doubt should be resolved in the claimant's favor with regard to the question of whether certain signs and symptoms can be attributed to the service-connected disability. Mittleider v. West, 11 Vet. App. 181, 182 (1998). Therefore, the Board resolves reasonable doubt in the Veteran's favor and attributes all manifestations found on examination to service-connected psychiatric disability.

On examination, the Veteran's symptoms included depressed mood, chronic sleep impairment, disturbances of motivation and mood, and difficulty in establishing and maintaining effective work and social relationships. In addition, the Veteran endorsed experiencing persistently reexperiencing his military traumatic event; persistently avoiding stimuli associated with the trauma and numbing of general responsiveness; and persistent symptoms of increased arousal involving sleep impairment and difficulty concentrating. The examiner explained that the Veteran minimally met the criteria for a PTSD diagnosis, and found his level of psychiatric disability corresponded to occupational and social impairment with reduced reliability and productivity. 

The Veteran was again examined in September 2012. The examining psychiatrist reviewed the Veteran's claims file in connection with the examination and report. The examiner found the Veteran had chronic affective dysfunction of a mixed nature residual to his traumatic experiences in the military, but also found his condition did not fully meet criteria for a diagnosis of PTSD and otherwise did not rise to the level of severity of a major depressive disorder or anxiety disorder. Instead, the diagnosis was mood disorder not otherwise specified (NOS). The examiner found the Veteran was primarily suffering chronic pain and was very frustrated by the physical limitations imposed by his neck and arm problems he experienced, which were residual to the injuries he sustained in the military. The examiner elaborated that most of Veteran's complaints related to physical issues, including chronic constant neck pain, his left side shutting down at times, constant migraines, waking in a sweat at times due to pain, inconsistent appetite, and constipation. 

Reported symptoms on examination included depression and head shaking when becoming nervous. The Veteran also disclosed that he sometimes cries and contemplates suicide due to severe pain; however, he denied any suicide attempts. The examiner concluded that the Veteran's level of disability corresponded to occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks, although generally functioning satisfactorily with normal routine behavior self-care and conversation. The Veteran reported that his current wife of nine years owned a hair salon and she provided the financial support for them. 

In support of his claim, the Veteran submitted a May 2014 report from a private psychologist, C. Riebeling, Ph.D., located in Tennessee. The psychologist indicted she had reviewed written statements from the Veteran's sister and mother; private treatment records dated in 2002 pertinent to a cerebrovascular accident (stroke) with left-sided weakness; an August 2009 VA treatment record; VA examination reports; a questionnaire completed by the Veteran in December 2013; and records of 45-minute telephone interviews conducted in April 2014, one with the Veteran and one with his wife. 

Based on this evidence, Dr. Riebeling opined that the Veteran's PTSD warranted a 50 percent rating, effective from the July 6, 2012 VA examination. In support of her conclusion, Dr. Riebeling observed that the July 2012 VA examiner diagnosed PTSD and described the Veteran's "level of impairment to entail 'reduced reliability and productivity,' which is commensurate with a 50 [percent] rating." She emphasized that the Veteran's employment status changed in 2012 when he lost his job and it was at this point that he became symptomatic enough to be diagnosed with the conditions for which he was later service-connected, PTSD and mood disorder. 

Regarding the Veteran's symptoms and the proper disability rating prior to July 6, 2012, Dr. Riebeling believed the initial 30 percent rating for that period was proper based on the findings of the November 2002 and February 2009 VA examinations and the evidence demonstrating that the Veteran was still working at that time. She concurred with the prior examiner regarding the Veteran's lack of impairment. 

Finally, Dr. Riebeling explained that the Veteran's current functioning more closely approximated the criteria for a 70 percent rating based on symptoms such as occasional suicidal ideation, depression affecting the ability to function appropriately and effectively, occasional irrelevant speech, impaired impulse control, difficulty adapting to stressful circumstances, and an inability to establish and maintain effective relationships including with his biological children. The psychologist noted that both the Veteran and his wife reported that the Veteran suffered a significant degree of depression, including suicidal ideation. The Veteran was unable to quantify his baseline mood or the frequency of depressive episodes, but indicated he would withdraw from others and isolate himself, sometimes staying in bed and other times retreating to his closet. However, his wife reported that the Veteran's depression was noticeable to her and debilitating about three days per week. On those days, the Veteran would stay to himself and he would not interact with anyone. 

The Veteran's wife described the Veteran focusing on the past; having poor impulse control without good judgment, such as when he ordered new equipment for her salon without consulting her; and being paranoid, irritable, and argumentative. Pain was also a significant factor in the Veteran's mood as the pain interfered with his sleep and leisure activity. He was unable to play sports or participate in social activities such as being able to help at a cook out. 

The psychologist found the Veteran to be chronically irritable and argumentative, leaving him significantly compromised in his ability to adapt to stressful conditions as well as to form and maintain effective social or occupational relationships. The Veteran described himself as suspicious; his wife described him as paranoid, distrusting fellow church members and believing others were plotting against him, including her son. In turn, he liked to keep the blinds closed at all times or keep a blanket over the windows because he believed someone was looking in on him. The Veteran's spouse reported that the Veteran would come to her salon and be argumentative with her customers. She added that once he loses his temper, he remained affected for the rest of the day. His wife noted that his argumentativeness had been an issue at every job he had and currently threatened her own business at the salon. Dr. Riebeling summarized that the Veteran's PTSD with mood disorder caused occupational and social impairment in most areas including work, family relations, judgment, thinking, and mood. 

Finally, the Veteran was afforded a VA examination dated in June 2017. Following a review of the claims file and examination, the diagnosis was PTSD. Upon examination, the examiner found that the Veteran's level of disability corresponded to occupational and social impairment with deficiencies in most areas, such as work, school, family relations, judgment, thinking and/or mood. The Veteran was noted to live with his wife, a very sedentary life, with few friends, and very little social engagement. He did visit with family (at his house) on occasion, but even then had little tolerance for sustained interaction with others. He spent most of his time watching TV or occasionally visiting his wife at her beauty shop. She noted that he typically bothered customers after a time and she has to send him home. The Veteran was not employed and had not worked since prior to his last examination in 2012. The Veteran denied receiving any mental health treatment. 

Symptoms on examination included the following: depressed mood; anxiety; suspiciousness; near-continuous panic or depression affecting the ability to function independently, appropriately and effectively; flattened affect; impaired judgment; disturbances of motivation and mood; difficulty in establishing and maintaining effective work and social relationships; difficulty in adapting to stressful circumstances, including work or a work-like setting; and inability to establish and maintain effective relationships. The examiner observed the Veteran appeared very anxious, shaking his legs during the entire interview, and visibly nervous. He asked at one point for the door to be opened due to his symptoms of claustrophobia. The examiner found the Veteran had relatively severe symptoms of PTSD across all domains, which contributed to rage, reactivity, irritability, avoidance, emotional numbing, and marked hypervigilance. The examiner believed the Veteran's symptoms would make it difficult for him to engage effectively with individuals in the workplace due in part to anger management problems and poor social judgment while contributing to problems with reliability on the job due to extreme avoidance. 

The Veteran's spouse submitted statements in connection with the Veteran's claim. In July 2016, she reported that the Veteran would lose his temper on a daily basis to her, her customers at her beauty shop, and family members. On many occasions when the Veteran would lose control, he would immediately begin to throw objects to those around him and turn over garbage cans. She believed the Veteran was "highly depressed." He would constantly speak about events during his military service and what he could have done to make situations better. She described his memory as poor after he experiences nightmares and loses his temper. She reported she had removed all weapons and knifes out of the home for safety. She described waking three to five times per week due to the Veteran's nightmares and sleep walking. She indicated the Veteran experienced loss of appetite and crying spells after throwing temper tantrums. She reported that she had lost many customers at her business due to the Veteran's PTSD outbreaks. 

In May 2017 correspondence, the Veteran's wife clarified that the Veteran was not an employee or owner of her salon. However, on occasion the Veteran would appear at her beauty shop and have outbursts and tantrums in the salon, negatively affecting her customers and the relationship with her and the family. 

After considering the record in its entirety, the Board finds that prior to July 6, 2012, an initial rating in excess of 30 percent for PTSD is not warranted. The evidence prior to July 2012 reflects mild symptoms productive of no more than an occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks. For example, at the November 2002 VA examination, the examiner described the Veteran's disability as mild and largely in control. He was able to maintain regular work habits with only slight impairment and had no significant impairment in his social relationships. The report of the private psychologist, which the Veteran submitted, is consistent with this conclusion. As discussed in detail above, that psychologist agreed that the 30 percent rating was commensurate with the Veteran's psychiatric condition as described in the November 2002 and February 2009 VA examinations. 

For the period from July 6, 2012 through September 23, 2012, the Board finds the criteria for a 50 percent rating for PTSD have been met. As discussed in detail above, at the VA examination conducted on July 6, 2012, the examiner determined that the Veteran's symptoms produced occupational and social impairment with reduced reliability and productivity. The Board's conclusion that a 50 percent rating is warranted during this period is consistent with the opinion of the private psychologist, who agreed that the symptoms and impairment reflected in the 2012 VA examination reports more closely approximated a 50 percent disability rating. There is no probative evidence that the Veteran's PTSD with mood disorder produced symptoms that resulted in impairment warranting a rating in excess of 50 percent during this period. As such, a 50 percent rating is warranted for PTSD with mood disorder from July 6, 2012 to September 24, 2012. 

At his September 24, 2012 VA examination, the Veteran competently and credibly reported that when he gets nervous, his head shakes, and he will cry and contemplate suicide. The Court has held that suicidal ideation generally rises to the level contemplated in a 70 percent evaluation. See Bankhead v. Shulkin, 29 Vet. App. 10 (2017). The Court specified that VA must not require "more than thought or thoughts to establish the symptom of suicidal ideation," and may not require that the Veteran have "been hospitalized or treated on an inpatient basis" to establish suicidal ideation because that "imposes a higher standard than the criteria in the [Diagnostic Code] for mental disorders." Id. Moreover, the Court cautioned VA not to conflate the risk of "suicidal ideation, which VA generally considers indicative of a 70 [percent] evaluation, and his risk of self-harm, the persistent danger of which VA generally considers indicative of a 100 [percent] evaluation." Id. As applied, the passive suicidal ideation which the examiner recorded at the Veteran's September 24, 2012 VA examination is sufficient to establish the suicidal ideation symptom consistent with a 70 percent rating in the General Rating Formula for Mental Disorders. 38 C.F.R. § 4.130.

Moreover, on May 1, 2014, the private psychologist concluded the Veteran had deficiencies in most areas such as work, family relations, judgment, thinking, and mood. This assessment corresponds to a 70 percent evaluation. At no point during the appeal period, however, did the evidence indicate that the Veteran's PTSD with mood disorder produced total occupational and social impairment, due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); and disorientation to time or place; memory loss for names of close relatives, own occupation, or own name.

Although he is socially impaired, the evidence of record reflects the Veteran does maintain a relationship with his spouse and visits her and her customers at her place of employment. His grandchildren and other family members visit his home, he has a few friends, and remains a member of a church. Thus, the evidence does not show total occupational and social impairment due to PTSD with mood disorder and neither the symptoms nor overall level of impairment meet the criteria for a 100 percent rating under the Rating Schedule. 

In conclusion, the Board finds that the Veteran's overall level of functioning and symptomatology associated with his PTSD with mood disorder is most consistent with the assignment of a 30 percent rating prior to July 6, 2012, a 50 percent rating beginning July 6, 2012, and a 70 percent rating effective September 24, 2012. After reviewing the record, however, the Board finds that the assignment of an initial rating in excess of 70 percent is not warranted at any time during the appeal period. 

The Board has considered staged ratings under Fenderson v. West, 12 Vet. App. 119 (1999), but concludes that they are not warranted beyond those already assigned because as explained above, the medical and lay evidence of record does not support higher ratings than already assigned or granted herein. 

In reaching the above conclusions, the Board has considered the applicability of the benefit of the doubt doctrine; however, as the preponderance of the evidence is against the Veteran's claim, that doctrine is not applicable. See 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102.

III. TDIU Claim

Entitlement to a TDIU has been established, effective June 17, 2017. The Veteran asserts he became unemployable due to PTSD with mood disorder prior to that date.

Total disability will be considered to exist where there is impairment of mind or body sufficient to render it impossible for the average person to follow a substantially gainful occupation. 38 C.F.R. § 3.340; 4.16. Marginal employment shall not be considered substantially gainful employment. 38 C.F.R. § 4.16(a). 

Total disability ratings for compensation may be assigned where the schedular rating is less than total when the disabled person is unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities, provided that, if there is only one such disability, the disability shall be ratable at 60 percent or more, and if there are two or more disabilities, there shall be at least one disability ratable at 40 percent or more, and sufficient additional disability to bring the combined rating to 70 percent or more. 38 C.F.R. § 4.16(a). Factors to be considered are the Veteran's education, employment history, and vocational attainment. Ferraro v. Derwinski, 1 Vet. App. 326 (1991).

The Court has held that in determining whether the Veteran is entitled to a total disability rating based upon individual unemployability neither his nonservice-connected disabilities nor his advancing age may be considered. Van Hoose v. Brown, 4 Vet. App. 361 (1993). The sole fact that a claimant is unemployed or has difficulty obtaining employment is not enough. A high rating in itself is a recognition that the impairment makes it difficult to obtain and keep employment. The question is whether the Veteran is capable of performing the physical and mental acts required by employment, not whether the Veteran can find employment. Id.

In a claim for TDIU, the Board may not reject the claim without producing evidence, as distinguished from mere conjecture, that the Veteran's service-connected disability or disabilities do not prevent him from performing work that would produce sufficient income to be other than marginal. Friscia v. Brown, 7 Vet. App. 294 (1995). The Court stressed that VA has a duty to supplement the record by obtaining an examination which includes an opinion on what effect the appellant's service-connected disabilities have on his ability to work. Id. at 297 (citing 38 U.S.C. § 5107(a); 38 C.F.R. §§ 3.103(a), 3.326, 3.327, 4.16(a)). 

As set forth above, the Board has determined that a 70 percent rating is warranted for PTSD as of September 24, 2012. This is the Veteran's only service-connected disability. Thus, the Veteran has met the schedular percentage criteria for a TDIU as of that date. 

In addition, the record shows that the Veteran was unemployed as of September 24, 2012, and the May 2014 private psychologist indicated that the Veteran experienced occasional suicidal ideation, depression affecting the ability to function appropriately and effectively, occasionally irrelevant speech, impaired impulse control, difficulty adapting to stressful circumstances, and inability to establish and maintain effective relationships. At the September 2012 VA examination, the Veteran reported that he had been on unemployment until it ran out; he further reported that over the past two months, he had driven a small dump truck whenever he was called in. The Board finds that such partial employment lacks the regularity to rise to the level of a substantially gainful occupation. 38 C.F.R. § 4.16(a). At the May 2014 examination, the Veteran showed deficiencies in most areas such as work, family relations, judgment, thinking, and mood. These symptoms are similar to those noted in the June 2017 VA examination report in which the examiner found that the Veteran's symptoms would make it difficult for him to engage effectively with individuals in the workplace due in part to anger management problems and poor social judgment while contributing to problems with reliability on the job due to extreme avoidance.

Based on the foregoing, and affording the Veteran the benefit of the doubt, the Board finds that the Veteran's service-connected PTSD precluded substantially gainful employment, effective September 24, 2012. Accordingly, the Board finds that entitlement to TDIU is warranted as of that date. See 38 C.F.R. §§ 3.102, 4.16(a). 


ORDER

For the period prior to July 6, 2012, an initial rating in excess of 30 percent for PTSD is denied.

For the period from July 6, 2012 through September 23, 2012, a 50 percent rating for PTSD is granted, subject to the law and regulations governing the payment of monetary benefits.

Effective September 24, 2012, a 70 percent rating for PTSD is granted, subject to the law and regulations governing the payment of monetary benefits.

Effective September 24, 2012, entitlement to a TDIU is granted, subject to the law and regulations governing the payment of monetary benefits.


REMAND

A TDIU rating may be assigned under 38 C.F.R. § 4.16(a) or (b), depending on whether the Veteran meets the minimum threshold disability rating(s) described in 4.16(a). In the decision above, the Board found the Veteran met the threshold schedular criteria for a TDIU based on PTSD symptoms more nearly approximating the criteria for a 70 percent rating, effective September 24, 2012.

However, prior to September 24, 2012, the Veteran's only service-connected disability, PTSD with mood disorder, was rated 30 percent disabling prior to July 6, 2012, and 50 percent disability from July 6, 2012 through September 23, 2012. Therefore, he does not meet the threshold rating criteria for a TDIU prior to September 24, 2012 under 38 C.F.R. § 4.16(a). Nevertheless, it is the policy of VA that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service connected disability shall be rated totally disabled. 38 C.F.R. § 4.16(b). Thus, if a veteran fails to meet the applicable percentage standards enunciated in 38 C.F.R. § 4.16(a), an extra-schedular rating is for consideration where the veteran is unemployable due to service connected disability. 38 C.F.R. § 4.16(b); see also Fanning v. Brown, 4 Vet. App. 225 (1993). Neither nonservice-connected disabilities nor advancing age may be considered in the determination. 38 C.F.R. §§ 3.341, 4.19; Van Hoose v. Brown, 4 Vet. App. 361, 363 (1993). Thus, VA may not consider the effects of the Veteran's nonservice-connected disabilities on his ability to function. 

In this case, the May 19, 2014 report from the private psychologist, which VA received on June 9, 2014, indicates the Veteran had not worked since 2012 "when he lost his job," and his PTSD symptoms had increased in severity since that time. At the September 2012 VA examination, the Veteran reported that he had been on unemployment until it ran out. In other words, the evidence of record suggests that the Veteran has been unable to secure and follow a substantially gainful occupation consistent with his occupational experience as a truck driver and tenth-grade educational attainment due to PTSD symptoms prior to September 24, 2012. Therefore, because the Board cannot consider entitlement to TDIU under 38 C.F.R. § 4.16(b) in the first instance, the Board must remand the claim for referral to VA's Director of Compensation Service if such consideration is warranted. Bowling v. Principi, 15 Vet. App. 1, 10 (2001). The claim for TDIU benefits prior to September 24, 2012 will therefore be remanded for consideration on an extraschedular basis by the Director.

Accordingly, the case is REMANDED for the following action:

1. Refer to the Director of Compensation and Pension Service the issue of entitlement to a TDIU prior to September 24, 2012 under 38 C.F.R. § 4.16(b). The Veteran's service-connected PTSD with mood disorder, as well as his employment history as a truck driver, educational and vocational attainment, and all other factors having a bearing on his employability (or lack thereof) should be considered.

2. After completion of the above, the AOJ should readjudicate the Veteran's claim for a TDIU under 38 C.F.R. § 4.16(b) prior to September 24, 2012. If the benefit sought remains denied, issue a supplemental statement of the case (SSOC) and provide the Veteran and his attorney the requisite period of time to respond. The case should then be returned to the Board for further appellate review, if otherwise in order. 

The Veteran has the right to submit additional evidence and argument on the matter the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C. §§ 5109B, 7112 (2012).




______________________________________________
DAVID GRATZ
Acting Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs