LANCE, Judge:
The appellant, veteran Billy D. McCar-roll, appeals through counsel a June 4, 2014, decision of the Board of Veterans’ Appeals (Board) that, in part, denied entitlement to an initial compensable disability rating for hypertension.[2] Record (R.) at 1-14. This case was submitted to a panel for decision on January 15, 2016, and a panel of the Court heard oral argument on April 12, 2016.[3] On July 1, 2016, this case was submitted to the full Court for review pursuant to part VII of the Court’s Internal Operating Procedures.
For the reasons that follow, the Court will affirm that part of the Board’s June 2014 decision now on appeal. In addition, the Board dismissed the appellant’s claims for entitlement to service connection for a neck disorder, bilateral hearing loss, tinnitus, and sinusitis, as well as his claims for entitlement to increased initial disability ratings for left shoulder strain, right carpal tunnel syndrome, and choroidal nevus of the right eye. R. at 9. As the appellant presents no argument as to those determinations, the Court will deem those matters abandoned and will accordingly dismiss the *269 appeal as to those issues. See Pederson v. McDonald, 27 Vet.App. 276, 283 (2015) (en banc).
I. BACKGROUND
The appellant served in the U.S. Army from December 1983 to September 1992 and from January 1994 to August 2009. R. at 724-25. A September 14, 2008, service treatment record (STR) reflects blood pressure readings of 132/95 and 128/95. R. at 946. A March 2, 2009, STR noted a history of borderline hypertension. R. at 928. The examiner recorded blood pressure readings of 112/79,144/92, and 142/88, and recommended a five-day blood pressure check. R. at 928. Records dated between March 3, 2009, and March 5, 2009, note blood pressure readings of 128/88, 138/80, 156/100, 148/96, 120/92, and 126/90. R. at 761, 919. On March 5, 2009, the appellant filed a claim for entitlement to service connection for hypertension. R. at 786-96.
On April 1, 2009, a private cardiologist prescribed the appellant Lisinopril,[4] 10 mg. R. at 755-57. The following day, the appellant underwent a VA examination; the examiner observed that “[the appellant] has had occasional blood pressure elevations at routine physical examinations.” R. at 739. The examiner noted that the appellant had just been prescribed Lisinopril by his cardiologist and he diagnosed the appellant with essential hypertension. R. at 739, 741. That same day, the appellant’s blood pressure was measured as 141/94 in the right arm while sitting, 117/78 in the left arm while sitting, and 116/79 while standing. R. at 470.
In an October 2009 rating decision, the Salt Lake City, Utah, VA regional office (RO) granted service connection for hypertension and assigned a noncompensable rating. R. at 674-79, 683-705. The appellant filed a Notice of Disagreement in October 2009, R. at 673, and perfected his appeal in October 2010, R. a 613-15.
A private medical record from May 2010 reflects a blood pressure reading of 148/95. R. at 533. In November 2010, the appellant underwent another VA examination. R. at 584-89. The examiner noted that the appellant’s blood pressure “demonstrates good control with normal readings” and that the appellant’s Lisinopril dosage had increased to 20 mg. R. at 585. The appellant’s blood pressure was recorded as 133/86 on March 31, 2011, R. at 458, and as 127/84 on July 9, 2012, R. at 343. At a November 2012 Board hearing, the appellant testified that his diastolic blood pressure readings were over 100 “two or three times” before he began taking blood pressure medication. R. at 245-46. He also testified that he believed his blood pressure would be higher if he were not taking his medication. R. at 244-45.
In June 2014, the Board denied entitlement to an initial compensable rating for hypertension under 38 C.F.R. § 4.104, diagnostic code (DC) 7101 (hypertensive vascular disease). R. at 1-14. The Board found that “[the appellant’s] hypertension has not manifested with diastolic pressure predominantly 100 or more, with or without medication; or, systolic pressure predominantly 160 or more throughout the initial rating period.” R. at 4. The Board acknowledged the appellant’s argument that he would meet the criteria for a 10% disability rating if he were not using medication. R. at 8. The Board determined, however, that this assertion was “inaccurate,” as “prior to being placed on medi *270 cation, the [appellant] was diagnosed with occasional slightly elevated blood pressure readings” and “the preponderance of the evidence shows he does not have a history of diastolic pressure predominantly 100 or more.” R. at 8-9. This appeal followed.
II. THE PARTIES’ ARGUMENTS
The appellant argues that the Board erred when it denied entitlement to a com-pensable rating for hypertension on a schedular basis and when it determined that he was not entitled to referral for consideration of whether an extraschedular rating was warranted. Appellant’s Brief (Br.) at 4-19. With respect to his schedular evaluation, the appellant raises three contentions. First, he asserts that the Board “failed to properly address the effects of [his] need for continuous medications for control of his hypertension” and misinterpreted the rating criteria for hypertension under DC 7101. Id. at 5, 4-16. Specifically, he argues that the Board violated the Court’s holding in Jones v. Shinseki, 26 Vet.App. 56, 63 (2012), by failing to discount the ameliorative effects of his blood pressure medication. Id. at 10-11. The appellant contends that, without medication, his blood pressure would either meet the criteria for a higher disability rating or, at a minimum, more nearly approximate the criteria for a higher evaluation. Id. at 8-11 (citing 38 C.F.R. §§ 4.3 (2016), 4.7 (2016)). He further asserts that the issue of what his blood pressure would be without medication is a question requiring medical expertise and that the Board therefore violated Colvin v. Derwinski, 1 Vet.App. 171, 172 (1991), when it determined that he would not meet the criteria for a compen-sable rating were he not taking medication without citing any supporting medical evidence. Id. at 5-7, 9.
Second, and in the alternative, the appellant argues that, even assuming that the Board was permitted to consider the ameliorative effects of his medication, it erred by failing to discuss whether his disability picture more nearly approximated the criteria for a higher disability rating. Id. at 13 (citing 38 C.F.R. § 4.7). Finally, he asserts that the Board clearly erred when it determined that he did not have a history of diastolic pressure readings of 100 or more and, thus, that he did not satisfy the criteria for a 10% disability rating under DC 7101. Id. at 14-15 (citing R. at 919).
With respect to the issue of referral for extraschedular consideration, the appellant contends that the Board erred by failing to discuss whether referral was warranted. Id. at 16-19. In particular, he argues that “the rating criteria, as interpreted by the Board, do not address [his] specific disability picture,” as there is “a medical question as to whether, but for his use of medication, he would have compensable blood pressure readings.” Id. at 18. He asks the Court to vacate and remand the Board’s decision. Id. at 19.
The Secretary responds that the Board did not err in denying entitlement to a compensable disability for hypertension on either a schedular or extraschedular basis. Secretary’s Br. at 7-28. With respect to the effects of the appellant’s blood pressure medication, the Secretary contends that DC 7101 contemplates “a need for continuous medication to control the hypertension” and, thus, that Jones is inapplicable. Id. at 15-17. He argues that the Board did not clearly err when it determined that the appellant did not have diastolic blood pressure readings that were predominantly 100 or higher, systolic blood pressure readings that were predominantly 160 or higher, or a history of diastolic blood pressure predominantly 100 or more. Id. at 20; see 38 C.F.R. § 4.104, DC 7101 (2016). Moreover, the Secretary asserts *271 that § 4.7 is inapplicable in this case, as “ ‘there is no question as to which evaluation shall be applied when a veteran does not satisfy all of the required criteria of the higher rating but does satisfy all of the criteria of the lower rating.’ ” Secretary’s Br. at 21, 18-21 (quoting Middleton v. Shinseki, 727 F.3d 1172, 1178 (Fed. Cir. 2013)). Finally, the Secretary argues that the Board was not required to discuss the issue of entitlement to referral for extras-chedular consideration, contending that the issue was neither raised by the appellant nor reasonably raised by the record. Id. at 23-28. He asks the Court to affirm the Board’s decision. Id. at 28.
III. ANALYSIS
A. Schedular Evaluation
The appellant’s arguments regarding the proper schedular evaluation for his hypertension turn, in large part, on two related issues: first, whether the criteria in DC 7101 contemplate the effects of medication, including whether Jones prohibits the Board from considering those effects when evaluating hypertension; and, second, whether his disability picture, with or without medication, “more nearly approximates” the criteria for a 10% disability rating than his current noncompensable evaluation.
1. DC 7101, Jones, and the Effects of Medication
The Court will first turn to the issue of whether DC 7101 contemplates the effects of medication. As the Court explained in Jones, “the Board may not deny entitlement to a higher rating on the basis of relief provided by medication when those effects are not specifically contemplated by the rating criteria.” 26 Vet.App. at 63; see Massey v. Brown, 7 Vet.App. 204, 208 (1994) (“The Board’s consideration of factors which are wholly outside the rating criteria provided by the regulations is error as a matter of law.”). Thus, if DC 7101 does not specifically contemplate the effects of medication, the Board is required pursuant to Jones to discount the ameliorative effects of medication when evaluating hypertension. Conversely, if DC 7101 does specifically contemplate the effects of medication, then Jones is inapplicable. The Court holds that DC 7101 contemplates the effects of medication and, therefore, that Jones does not apply.
“The starting point in interpreting a statute [or regulation] is its language.” Good Samaritan Hosp. v. Shalala, 508 U.S. 402, 409, 113 S.Ct. 2151, 124 L.Ed.2d 368 (1993); see Smith v. Brown, 35 F.3d 1516, 1523 (Fed. Cir. 1994) (“The canons of construction of course apply equally to any legal text and not merely to statutes.”). “Where a statute’s language is plain, and its meaning clear, no room exists for construction.” Gardner v. Derwinski, 1 Vet.App. 584, 587-88 (1991), aff'd sub nom. Brown v. Gardner, 513 U.S. 115, 115 S.Ct. 552, 130 L.Ed.2d 462 (1994). Statutes and regulations “must be considered as a whole and in the context of the surrounding statutory [and regulatory] scheme.” Gazelle v. McDonald, 27 Vet.App. 461, 464 (2016) (citing King v. St. Vincent’s Hosp., 502 U.S. 215, 221, 112 S.Ct. 570, 116 L.Ed.2d 578 (1991)).
Pursuant to DC 7101, a 60% disability rating is warranted for hypertension with “[d]iastolic pressure predominantly 130 or more.” 38 C.F.R. § 4.104, DC 7101. A 40% evaluation is warranted for “[d]iastolic pressure predominantly 120 or more,” and a 20% disability rating is warranted for “[d]iastolic pressure predominantly 110 or more, or systolic pressure predominantly 200 or more.” Id. A 10% evaluation is warranted in three circumstances: first, diastolic pressure predominantly 100 or more; second, systolic pressure predomi *272 nantly 160 or more; or third, as a “minimum evaluation for an individual with a history of diastolic pressure predominantly 100 or more who requires continuous medication for control.” Id. Note (1) to DC 7101 states, in part, that “the term hypertension means that the diastolic blood pressure is predominantly 90mm. or greater.” Id.
The criteria for compensable evaluations under DC 7101 thus contemplate two factual alternatives. First, a veteran whose blood pressure is currently controlled by medication—i.e., whose blood pressure does not otherwise meet the criteria for a compensable evaluation—but who has a history of diastolic pressure predominantly 100 or more is entitled to receive the minimum compensable evaluation of 10%. Id. Second, a veteran whose blood pressure is currently elevated to varying degrees is entitled to evaluations ranging from 10% to 60%. Id. Read together, see Gazelle, 27 Vet.App. at 464, these two scenarios clearly contemplate the effects of medication: either a veteran’s blood pressure is controlled by medication, warranting a 10% evaluation if there is a history of elevated systolic pressure, or it is not, in which case the actual blood pressure level determines the disability rating.
The Court’s analysis in Jones supports this reading of DC 7101. In that case, the Court held that 38 C.F.R. § 4.114, DC 7319, which sets forth the rating criteria for irritable bowel syndrome, did not contemplate the effects of medication. 26 Vet. App. at 63. The Court explained that “[t]he Secretary has demonstrated ... that he is aware of how to include the effect of medication as a factor to be considered when rating a particular disability” and cited 38 C.F.R. § 4.71a, DC 5025 (“Fibromyalgia”), as an example of a DC that does contemplate the effects of medication. Id. at 62. DC 5025, like DC 7101, only explicitly references medication in its criteria for a 10% evaluation. 38 C.F.R. § 4.71a, DC 5025 (2016).
Although the appellant contends that the regulation, its implementing comments in the Federal Register, and VA’s M21-1 Adjudication Procedures Manual (M21-1) “show[ ] that the Secretary intends to compensate veterans whose condition is ‘brought under control’ by medications such that the condition no longer reaches blood pressure readings the rating criteria recognize as compensable,” Appellant’s Br. at 12, his arguments are not persuasive. First, as discussed above, the plain language of the rating criteria listed under DC 7101 demonstrates that this diagnostic code, read as a whole, contemplates the effects of medication in assigning a disability rating for hypertension. See Gazelle, 27 Vet.App. at 464; Gardner, 1 Vet.App. at 587-88.
Second, the sections of the Federal Register cited by the appellant[5] do not alter *273 the Court’s analysis. In 1997, the Secretary amended DC 7101. 62 Fed. Reg. 65,-207, 65,215 (Dec. 11, 1997). In doing so, he shifted the language providing a 10% evaluation on the basis of continuous medication with a history of diastolic pressure predominantly 100 or more from a separate note into the criteria for a 10% evaluation, as it “represents part of the evaluation criteria.” Id. He explained that “the evaluation for hypertension is based not on the amount of medication required to control it, but on the level of control that can be achieved.” Id. This explanation makes clear that the use of medication is directly addressed and contemplated by the evaluation criteria under DC 7101.
Third, although the appellant cites the predecessor to the M21-1 as requiring VA adjudicators to “ ‘start with ... the readings taken as part of a ... diagnostic workup period leading to the prescription of medication’ ” as evidence that DC 7101 does not contemplate the effects of medication, Appellant’s Br. at 12 (quoting VA Adjudication Procedures Manual Rewrite (M211MR) pt. III, subpt. iv, ch. 4, § E.20.e) (emphasis removed), it is not clear whether that provision relates to DC 7101 as a whole or merely to whether a veteran whose blood pressure is controlled by medication satisfies the criteria for a 10% evaluation. The current M21-1, however, includes the cited language as part of its instructions on how to evaluate whether a veteran’s “past diastolic pressure (before medication was prescribed) was predominantly 100 or greater” when “current predominant blood pressure readings are non-compensable.” M21-1, pt. III, subpt. iv, ch. 4, § E.1.e. In any event, the appellant fails to explain how his citation to the M21-1’s predecessor, which focuses upon the relevant period for determining whether a claimant has a history of blood pressure readings, supports his broader argument that the Secretary intended to compensate all veterans whose blood pressure readings are controlled by medication. See Locklear v. Nicholson, 20 Vet.App. 410, 416 (2006) (holding that the Court will not entertain underdeveloped arguments).
In sum, as the plain language of DC 7101 contemplates the effects of medication, and because the Secretary’s comments in the Federal Register at the time of its 1997 amendment support this reading, the Court holds that DC 7101 contemplates the effects of medication and, thus, that Jones is not applicable. Accordingly, the Court rejects the appellant’s arguments that the Board erred when it failed to consider whether he would be entitled to a compensable rating if he were not taking medication. See Appellant’s Br. at 8-11. As the appellant’s contentions that a medical opinion was required to properly discount the effects of his medication and that the Board violated Colvin when it relied on its own medical judgment are premised on his erroneous reading of DC 7101, id. at 5-7, 9, the Court rejects those arguments, as well.

2. The Appellant’s Remaining Arguments

Having determined that Jones does not apply and that the Board did not err by considering the ameliorative effects of the appellant’s medication, the Court will address the appellant’s remaining arguments that the Board erred when it found that he did not more nearly approximate the criteria for a 10% evaluation and did *274 not have a history of diastolic pressure predominantly 100 or more. See Appellant’s Br. at 13-15.
Turning first to the appellant’s contention that he does, in fact, have a history of diastolic pressure predominantly 100 or more, id. at 15, the Court holds that the Board did not clearly err when it determined that he did not, R. at 8; see Hood v. Shinseki, 23 Vet.App. 295, 299 (2009) (“The Court reviews factual findings under the ‘clearly erroneous’ standard such that it will not disturb a Board finding unless, based on the record as a whole, the Court is convinced that the finding is incorrect.”). In support of his argument, the appellant cites medical records documenting six blood pressure readings prior to when he began taking medication. Appellant’s Br. at 15 (citing R. at 919). Those readings, all dated March 2, 2009, are 144/92, 142/86, 128/88, 138/80, 156/100, and 148/96. R. at 919. Although there is one reading demonstrating diastolic pressure of 100, that single reading does not demonstrate clear error in the Board’s finding that the appellant did not have a history of diastolic pressure predominantly 100 or more, as required by the rating criteria. See 38 C.F.R. § 4.104, DC 7101. Rather, to accept the appellant’s argument would be to omit the key word “predominantly” from the rating criteria, which the Court cannot do. See 38 U.S.C. § 7252(b) (“The Court may not review the schedule of ratings for disabilities ... or any action of the Secretary in adopting or revising that schedule.”); Moskal v. United States, 498 U.S. 103, 109, 111 S.Ct. 461, 112 L.Ed.2d 449 (1990) (reiterating “the established principle that a court should ‘give effect, if possible, to every clause and word of a statute’ ” (quoting United States v. Menasche, 348 U.S. 528, 538-39, 75 S.Ct. 513, 99 L.Ed. 615 (1955))); see Wingard v. McDonald, 779 F.3d 1354, 1356-57 (Fed. Cir. 2015) (discussing the Court’s inability to review the schedule of ratings for disabilities).
Similarly, although the appellant contends that the Board erred by failing to consider whether he more nearly approximated the criteria for a 10% evaluation, Appellant’s Br. at 13-16, the Court is not persuaded. See Hilkert v. West, 12 Vet.App. 145, 151 (1999) (en banc) (“An appellant bears the burden of persuasion on appeals to this Court.”), aff'd per curiam, 232 F.3d 908 (Fed. Cir. 2000) (table). To qualify for a 10% evaluation under DC 7101, a veteran must satisfy one of three alternatives: first, current diastolic pressure predominantly 100 or more; second, current systolic pressure predominantly 160 or more; or third, a history of diastolic pressure predominantly 100 or more with blood pressure controlled by continuous medication. 38 C.F.R. § 4.104, DC 7101. “Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned.” 38 C.F.R. § 4.7.
In its decision, the Board did not specifically discuss whether the appellant satisfied either the first or second alternative for a 10% evaluation, but it determined that he had “diastolic pressure predominantly less than 100, and systolic pressure predominantly less than 150.” R. at 8. With respect to the third alternative, the Board acknowledged that the appellant “clearly requires continuous medication” but found that “the preponderance of the evidence shows he does not have a history of diastolic pressure predominantly 100 or more,” and thus that he “more nearly approximated the assigned noncompensable rating.”[6] R. at 9 (citing, inter alia, 38 C.F.R. § 4.7).
*275 Although the appellant argues that he may satisfy the first or second alternatives were the Board to discount the effects of his medication, Appellant’s Br. at 15-16, the Court has already considered and rejected that argument above. With respect to the third alternative, the Court is not persuaded that the Board erred when it determined that his diastolic pressure history more nearly approximated the non-compensable level. As noted above, the Board specifically determined that the appellant did not satisfy the criteria for a 10% evaluation. R. at 9. Moreover, the Court is not convinced that the blood pressure readings cited by the appellant “more closely approximate” diastolic pressure of pressure 100 or more, as opposed to diastolic pressure predominantly 90 or more as required by a noncompensable evaluation. See 38 C.F.R. § 4.104, DC 7101, Note (1) (defining hypertension for VA purposes as “diastolic blood pressure [that] is predominantly 90 mm. or greater”). In short, the Board properly determined that there was no question as to which evaluation applied, and § 4.7 therefore was not for application. See 38 C.F.R. § 4.7.
Ultimately, the Court is not persuaded that the Board clearly erred when it determined that the appellant was not entitled to a compensable evaluation for hypertension under DC 7101. See Johnston v. Brown, 10 Vet.App. 80, 84 (1997) (the Board’s assignment of a disability rating is a question of fact, which the Court reviews under the “clearly erroneous” standard). Further, as the Board’s decision regarding the proper schedular evaluation is understandable and facilitates judicial review, the Court holds that the Board provided an adequate statement of reasons or bases to support that determination. See 38 U.S.C. § 7104(d)(1); Allday v. Brown, 7 Vet.App. 517, 527 (1995).
B. Extraschedular Referral
As a final matter, the Court rejects the appellant’s contention that the Board erred by failing to address whether referral for extraschedular consideration was warranted. Appellant’s Br. at 16-19. “[T[he issue of whether referral for extras-chedular consideration is warranted must be argued by the claimant or reasonably raised by the record.” Yancy v. McDonald, 27 Vet.App. 484, 495 (2016); see Robinson v. Peake, 21 Vet.App. 545, 552 (2008) (the Board is required to consider all issues raised by a claimant or reasonably raised by the evidence of record), aff'd sub nom. Robinson v. Shinseki, 557 F.3d 1355 (Fed. Cir. 2009). The Board is required to discuss referral “[w]here there is evidence in the record that shows exceptional or unusual circumstances,” Colayong v. West, 12 Vet.App. 524, 536 (1999), or where “the evidence of record suggests that a schedu-lar rating may be inadequate,” Thun v. Peake, 22 Vet.App. 111, 115 (2008), aff'd sub nom. Thun v. Shinseki, 572 F.3d 1366 (Fed. Cir. 2009). “Where, however, [38 C.F.R.] ‘§ 3.321(b)(1) [is] neither specifically sought by [the claimant] nor reasonably raised by the facts found by the Board,’ the Board is not required to discuss whether referral is warranted.” Fan *276 cy, 27 Vet.App. at 494 (quoting Dingess v. Nicholson, 19 Vet.App. 473, 499 (2006), aff'd, 226 Fed.Appx. 1004 (Fed. Cir. 2007)).
The appellant does not contend that he specifically raised this issue below. Accordingly, for the Board to have erred by failing to discuss referral for extraschedu-lar consideration, that issue must have been reasonably raised by the record. It was not. Although the appellant asserts that “the rating criteria, as interpreted by the Board, do not address [his] specific disability picture,” as there is “a medical question as to whether, but for his use of medication, he would have compensable blood pressure readings,” Appellant’s Br. at 18, the Court is not persuaded. Rather, as DC 7101 explicitly contemplates the effects of medication, the use of medication cannot constitute an unusual disability picture, and the question of what the appellant’s current disability would be absent his medication is not relevant. See 62 Fed. Reg. at 65,215 (“[T]he evaluation for hypertension is based not on the amount of medication required to control it, but on the level of control that can be achieved.”).
As referral for extraschedular consideration was neither argued by the appellant nor reasonably raised by the record, the Court holds that the Board did not err in failing to discuss that issue. See Yancy, 27 Vet.App. at 494. Accordingly, the Court will affirm that part of the Board’s decision denying entitlement to a compensable disability evaluation for hypertension,
IV. CONCLUSION
As DC 7101 explicitly contemplates the ameliorative effects of medication, the Board did not err when it considered the effects of the appellant’s medication when evaluating his hypertension. Moreover, the Board did not clearly err when it determined that the appellant did not have a history of diastolic pressure predominantly 100 or more or when it determined that his hypertension did not more nearly approximate the criteria for a 10% evaluation. Finally, as referral for extraschedular consideration was not raised by the appellant below or reasonably raised by the record, the Board did not err by failing to discuss that issue.
Therefore, upon consideration of the foregoing analysis, the record on appeal, and the parties’ briefs, that part of the Board’s June 4, 2014, decision denying entitlement to an initial compensable disability rating for hypertension is AFFIRMED. The appeal is DISMISSED as to the issues of entitlement to service connection for a neck disorder, bilateral hearing loss, tinnitus, and sinusitis, and entitlement to increased initial disability ratings for left shoulder strain, right carpal tunnel syndrome, and choroidal nevus of the right eye.
KASOLD, Judge, filed an opinion concurring in part in which SCHOELEN, Judge, joined. HAGEL, Senior Judge, filed a dissenting opinion in which GREENBERG, Judge, joined.

. The Court lacks jurisdiction over the appellant's claim for entitlement to service connection for liver disease, which the Board remanded, and it will not be addressed further. See 38 U.S.C. §§ 7252(a), 7266(a); Howard v. Gober, 220 F.3d 1341, 1344 (Fed. Cir. 2000).

.Matthew J. Ilacqua, of Providence, Rhode Island, argued for the appellant. Nicolas R. Esterman, of Washington, D.C., argued for the Secretary.

. Lisinopril is a medication prescribed for hypertension. Dorland’s Illustrated Medical Dictionary 1065 (32d ed. 2012).

. To support his argument that the Board misinterpreted the criteria for a 10% disability rating under DC 7101 by failing to discount the ameliorative effects of his medication, the appellant quotes the Secretary’s comment in the Federal Register that "[w]hether a ten-percent evaluation is warranted when continuous medication is required is based on a case-by-case assessment of each condition and the usual effects of treatment.” Appellant’s Br. at 12 (quoting 62 Fed. Reg. 65,207, 65,215 (Dec, 11, 1997)). The appellant thus creates the impression that the Secretary’s consideration of the need for continuous medication under DC 7101 may vary from case to case depending upon the circumstances of a particular claimant’s condition. However, when read in context, it is clear that the Secretary is instead explaining why he chose to include a minimum rating based on continuous medication only for certain DCs, including DC 7101. See 62 Fed. Reg. at 65,215.
To the extent that the appellant also cites the Federal Register to support his contention that DC 7101 does not simultaneously require *273 both the use of medication and current diastolic blood pressure readings of predominantly 100 or more, see Appellant’s Br. at 12, there is no dispute over this issue, as the Secretary acknowledges that the minimum compensable rating for hypertension requires only a history of elevated diastolic pressure, as opposed to currently elevated diastolic pressure, see Secretary's Br. at 9,

. The M21-1 specifically prohibits adjudicators from assigning a 10% evaluation if a *275 veteran meets only one of the two criteria for the third alternative:
Do not assign a 10[%] evaluation based upon a showing of one of the two conjunctive criteria above by invoking the benefit of the doubt rule .... When either criterion is simply not shown (for example, the claimant is using prescribed anti-hypertensive medication but diastolic pressure has never been predominantly 100 or greater) the evidence is not in relative equipoise on whether a 10-percent evaluation is appropriate and the disability picture does not more nearly approximate the 10-percent criteria.
M21-1, pt. Ill, subpt. iv, ch. 4, § E.l.e. The M21-1 acknowledges, however, that § 4.7 "may be applicable to whether the evidence supports each criterion.” Id.