# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 18-0520

ROBERT E. LANGDON, APPELLANT,

V.

ROBERT L. WILKIE,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Argued December 13, 2019                                   Decided February 5, 2020)

*Charles Collins-Chase*, of Washington, D.C., for the appellant.

*Shir Davidovicz*, with whom *Catherine C. Mitrano*, Acting General Counsel; *Mary Ann Flynn*, Chief Counsel; and *James B. Cowden*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before PIETSCH, ALLEN, and TOTH, *Judges*.

ALLEN, *Judge*: Appellant Robert E. Langdon served the Nation honorably in the United States Navy. He appeals a November 1, 2017, Board of Veterans' Appeals decision that granted a disability rating of 10% but no higher for a service-connected thoracic spine disability.[1] On June 13, 2019, the Court issued a single-judge memorandum decision affirming the Board's decision. Appellant filed a motion for reconsideration or, in the alternative, panel review. The Court granted appellant's motion for reconsideration and withdrew the June 2019 memorandum decision.

This matter was submitted to a panel of the Court to address whether a non-service-connected lumbar spine disability must be considered in rating a service-connected thoracic spine disability under 38 C.F.R. § 4.71a and the General Rating Formula for Diseases and Injuries of the Spine. Given the plain language of the rating formula, read in the context of the regulatory scheme as a whole, we hold that functional impairment caused by appellant's non-service-connected lumbar spine disability cannot be considered when rating his thoracic spine disability where there

---

[1] The Board's grant of a 10% disability rating is a favorable finding that the Court will not disturb. *See Medrano v. Nicholson*, 21 Vet.App. 165, 170-71 (2007). The Board also granted service connection for tinnitus, another favorable finding we will not disturb. *Id.*

is medical evidence distinguishing between impairments caused by the thoracic and lumbar spine disabilities. Therefore, we will affirm the Board's decision.

## I. FACTS AND PROCEDURAL HISTORY

Appellant served on active duty in the Navy from January 1980 to October 1996.[2] In July 2009, he filed a claim for service connection for a spine condition, "especially, the thorac[ic] [and] lumbar regions."[3] In September 2009, the regional office (RO) granted service connection for a thoracic spine condition and awarded a noncompensable rating.[4] Appellant filed a Notice of Disagreement with that disability rating and ultimately perfected an appeal to the Board. In a March 2014 decision, the Board remanded appellant's thoracic spine rating claim for a new VA medical examination.[5] The Board also determined that the RO had not adjudicated appellant's claim for service connection for a lumbar spine disability.[6] Citing 38 C.F.R. § 4.71a, the Board noted that "[a]ny decision with respect to the lumbar spine will affect the evaluation of the thoracic spine because they are evaluated together under the Rating Formula for Diseases and Injuries of the Spine."[7] Thus, the Board directed the RO to adjudicate the lumbar spine claim before readjudicating appellant's thoracic spine rating. Appellant did not object to the Board's remand instructions.[8]

In a May 2016 VA examination report, the examiner concluded that appellant's lumbar spine disability "is less likely than not" related to an in-service lumbar strain.[9] The examiner also noted that there was "no current functional limitation related to [appellant's] thoracic condition" and that his "decreased [range of motion] was caused by or related to [his] lumbar spine condition."[10] Appellant has never contested the adequacy of this examination and his counsel

---

[2] Record (R.) at 250-54.

[3] R. at 1025.

[4] R. at 968-76.

[5] R. at 685-93.

[6] R. at 689.

[7] *Id.*

[8] *See* Oral Argument at 13:30-14:30, *Langdon v. Wilkie*, U.S. Vet. App. No. 18-0520 (oral argument held Dec. 13, 2019), https://www.youtube.com/watch?v=tvw9dXri0js [hereinafter O.A.].

[9] R. at 93.

[10] *Id.*

affirmatively accepted its adequacy at oral argument.[11] In an August 2016 rating decision, the RO denied service connection for a lumbar spine condition.[12] Appellant conceded at oral argument that he had not appealed that decision and it became final.[13]

In the November 2017 decision on appeal, the Board granted a 10% disability rating pursuant to 38 C.F.R. §§ 4.45 and 4.59 for appellant's thoracic spine condition based on his subjective reports of painful motion.[14] However, the Board denied a higher rating based on the rating criteria. The Board relied on the May 2016 VA examination report that found no functional limitation due to his thoracic disability and concluded that appellant "had no pain on examination, to include after repetitive motion, and no other symptoms approximating a schedular evaluation in excess of "10%.[15] The Board also acknowledged its March 2014 remand and found substantial compliance because the RO had adjudicated appellant's lumbar spine claim, which was denied in August 2016 and which appellant did not appeal.[16] This appeal followed.

## II. PARTIES' ARGUMENTS

Appellant argues that the Board incorrectly applied Diagnostic Code (DC) 5237 in denying a disability rating greater than 10% for his service-connected thoracic spine disability. He contends that the plain language of DC 5237 considers the thoracic and lumbar spine as a single unit and that the Board was required to consider them as such, rather than separating the symptoms associated with each. He asserts that under this interpretation, he is entitled to a 20% disability rating because the evidence of record shows forward flexion not greater than 60 degrees. He relies on a 2003 amendment to the general rating formula in which VA proposed to rate the thoracic and lumbar spine as the "thoracolumbar spine" on the basis that they generally moved as a single unit. Based on this amendment, appellant argues that DC 5237 is clear that his thoracic and lumbar spine disabilities must be considered together. He further argues that to the extent the DC is

---

[11] O.A. at 23:30-25:25.

[12] R. at 52-56.

[13] O.A. at 42:23-42:30.

[14] R. at 16.

[15] Id.

[16] R. at 5.

ambiguous, the Board erred by not resolving any ambiguity in his favor under the "pro-veteran canon" the Supreme Court articulated in *Brown v. Gardner*.[17]

In his motion for reconsideration, appellant also for the first time challenged this Court's jurisdiction. He suggested that the Court exceeded its jurisdiction by inappropriately reviewing the rating schedule. In particular, he asserted that if the Court interpreted the rating schedule in such a way that his thoracic and lumbar spine injuries were not rated together, we would violate the limits Congress placed on our jurisdiction as it relates to the rating schedule.[18]

The Secretary argues that appellant's contentions lack merit because the context of the DC makes it plain that service connection must first be established before a rating can be assigned for a disability and that service connection and an appropriate rating are distinct concepts. The Secretary contends that the rating schedule applies only to service-connected injuries, which in this case would not include impairment due to appellant's lumbar spine disability. The Secretary also argues that VA is required to differentiate between the effects of service- and non-service-connected disabilities in assigning appropriate ratings and did so here in relying on medical evidence that distinguished between appellant's thoracic and lumbar conditions. Thus, the Secretary asserts that appellant has not met his burden of demonstrating error in the Board's decision. Moreover, the Secretary argues that the DC is not ambiguous and therefore a pro-veteran canon is not required in interpreting it. Finally, the Secretary does not contest our jurisdiction to interpret DC 5237.

### III. ANALYSIS

*A. Legal Framework*

Appellant's service-connected thoracic spine disability is rated pursuant to DC 5237 under the General Rating Formula for Diseases and Injuries of the Spine.[19] Under this formula, a 10% disability rating is warranted when the following limitations are found: (1) "Forward flexion of the thoracolumbar spine greater than 60 degrees but not greater than 85 degrees"; (2) "combined range of motion of the thoracolumbar spine greater than 120 degrees but not greater than 235 degrees";

---

[17] 53 U.S. 115 (1994).

[18] *See* Appellant's Motion for Reconsideration of the Court's June 13, 2019, Single-Judge Decision, or in the Alternative, a Panel Decision (Appellant's Motion for Reconsideration) at 3.

[19] 38 C.F.R. § 4.71a, DC 5237 (2019).

(3) "muscle spasm, guarding, or localized tenderness not resulting in abnormal gait or abnormal spinal contour; or vertebral body fracture with loss of 50 percent or more of the height."[20] A 20% rating is warranted when the following limitations are found: (1) "Forward flexion of the thoracolumbar spine greater than 30 degrees but not greater than 60 degrees"; or (2) the combined range of motion of the thoracolumbar spine not greater than 120 degrees"; (3) "muscle spasm or guarding severe enough to result in an abnormal gait or abnormal spinal contour such as scoliosis, reversed lordosis, or abnormal kyphosis."[21]

The assignment of a disability rating is a factual finding that the Court reviews for clear error.[22] "A factual finding 'is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'"[23] The Court may not substitute its judgment for that of the Board on issues of material fact merely because the Court would have decided those issues differently in the first instance.[24]

In contrast, the Court reviews the interpretation of regulations, including DCs, de novo.[25] To determine the meaning of a DC, we look first to "the language of the regulation, the plain meaning of which is derived from its text and its structure."[26] If the plain meaning of the regulation is clear from its language, then that meaning controls, and "that is 'the end of the matter.'"[27] When we assess the meaning of a regulation, we should not read its words in isolation but rather in the context of the regulatory scheme and structure as a whole.[28]

---

[20] *Id.*

[21] *Id.*

[22] 38 U.S.C. § 7261(a)(4); *Johnston v. Brown*, 10 Vet.App. 80, 84 (1997).

[23] *Hersey v. Derwinski*, 2 Vet.App. 91, 94 (1992) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)).

[24] *See id.*

[25] *See Tropf v. Nicholson*, 20 Vet.App. 317, 320 (2006); *see also Kent v. Principi*, 389 F.3d 1380, 1384 (Fed. Cir. 2004).

[26] *Petitti v. McDonald*, 27 Vet.App. 415, 422 (2015); *see Good Samaritan Hosp. v. Shalala*, 508 U.S. 402, 409 (1993); *Goodman v. Shulkin*, 870 F.3d 1383, 1386 (Fed. Cir. 2017).

[27] *Tropf*, 20 Vet.App. at 320 (quoting *Gardner*, 513 U.S. at 120).

[28] *King v. Shinseki*, 26 Vet.App. 484, 488 (2014).

*B. Court's Jurisdiction*

Appellant argues that the Court would exceed its jurisdiction if we determined that DC 5237 allowed thoracic and lumbar spine disabilities to be rated separately. It is true that Congress has precluded this Court from "re-view[ing] the schedule of ratings for disabilities adopted under section 1155 . . . or any action of the Secretary in adopting or revising that schedule."[29] But it is equally true that we unquestionably have jurisdiction over cases involving "an interpretation of the language in the regulations" related to the schedule.[30]

Here, appellant's challenge to the Board's decision involves the correct interpretation of DC 5237 when read in the context of the entire regulatory scheme–namely, what does "thoracolumbar" refer to when only one of the two conditions is service connected. Such a question falls squarely in the exception permitting this Court to consider the rating schedule, that is, the Court may consider the rating schedule when the Court interprets regulatory language.[31] Indeed, if appellant were correct about our jurisdiction, numerous decisions would be erased from the books.[32] That alone speaks volumes about the lack of merit in appellant's argument, especially considering that the Federal Circuit has confirmed our jurisdiction to interpret the rating schedule in just such a manner.[33]

We also note an oddity in appellant's jurisdictional argument. He contends that the Court is not allowed to analyze the meaning of the DC but can somehow review the Board's application of the regulation.[34] However, it is unclear how the Court can determine whether the Board clearly erred in applying the DC without first determining what the DC means. Additionally, appellant

---

[29] 38 U.S.C. § 7252(b).

[30] *Smith v. Nicholson*, 451 F.3d 1344, 1346-47 (Fed. Cir. 2006); *see also Wingard v. McDonald*, 779 F.3d 1354, 1357 (Fed. Cir. 2015).

[31] *Wingard*, 779 F.3d at 1357; *Jones v. Shinseki*, 26 Vet.App. 56, 60-61 (2012).

[32] *See, e.g.*, *Tedesco v. Wilkie*, 31 Vet.App. 360 (2019) (interpreting DC 5055 for knee prosthesis); *English v. Wilkie*, 30 Vet.App. 347 (2018) (interpreting DC 5257 for knee instability); *Burton v. Wilkie*, 30 Vet.App. 286 (2018) (interpreting the language of DC 7806 for a skin disorder); *McCaroll v. McDonald*, 28 Vet.App. 267 (2016) (en banc) (interpreting DC 7101 for hypertension); *Jones*, 26 Vet.App. 56 (interpreting DC 7319 for irritable bowel syndrome); *Otero-Castro v. Principi*, 16 Vet.App. 375 (2002) (interpreting DCs 7005 and 7007 for arteriosclerotic heart disease and hypertensive heart disease); *Drosky v. Brown*, 10 Vet.App. 251 (1997) (interpreting DC 7000 for rheumatic heart disease). We could continue this listing, but the point should be clear that we have consistently been in the business of interpreting the rating schedule as we are called on to do in this appeal.

[33] *See Smith*, 451 F.3d at 1348-49 (accepting that the Court could consider what was the correct interpretation of DC 6260).

[34] O.A. at 11:45-12:32.

argues that the Court should apply the "plain meaning" of the DC and is precluded from any other interpretation.[35] He is essentially saying that the Court has jurisdiction if we rule in his favor but that we do not if we rule against him. This position is untenable. A "plain language" interpretation of a regulation is still an interpretation. Thus, the Court either has jurisdiction to interpret the DC's meaning, no matter the meaning we find, or we lack jurisdiction to make any interpretation. If we lack jurisdiction to interpret the DC, as appellant seems to argue, then we must dismiss his appeal leaving the unfavorable Board decision undisturbed. In any event, we hold that this appeal falls squarely into the well-recognized interpretation exception that allows us to review the language of a DC to determine its meaning, and we, therefore, have jurisdiction to consider this matter.[36]

*C. The Meaning of "Thoracolumbar"*

Appellant's argument boils down to a contention that VA determined that the thoracolumbar spine was to be treated as a single unit for all purposes and that it is no longer appropriate to consider the thoracic and lumbar regions separately. So, he reasons, the Board erred when it relied on the uncontested fact that he was denied service connection for a lumbar spine disability and that there is medical evidence demonstrating that the spinal symptoms he experiences are entirely due to his lumbar injury. As we explain, we reject appellant's argument.

The regulation that introduces the entire rating schedule is entitled "essentials of evaluative rating."[37] It sets out an overarching starting point for our analysis: "This rating schedule is primarily a guide in the evaluation of disability resulting from all types of diseases and injuries encountered *as a result of or incident to military service*."[38] Thus, it is clear that the rating schedule is meant to compensate only service-connected disabilities. This common sense principle is key to our consideration of appellant's argument about DC 5237. This is so because his argument, if accepted, would mean that he would be compensated for his non-service-connected lumbar spine disability simply because he happens to have a service-connected thoracic spine condition. As we discuss, it is true that DC 5237 calls for the thoracic and lumbar spines *generally* to be rated as a unit. But it does not *mandate* that they be rated together. DC 5237 provides for such unitary treatment only when both segments of the spine are injured as a result of military service, that is,

---

[35] *See* Appellant's Brief (Br.) at 10-12; *see also* Appellant's Motion for Reconsideration at 3.

[36] *Wingard*, 779 F.3d at 1357.

[37] 38 C.F.R. § 4.1 (2019).

[38] *Id.* (emphasis added).

only when they are both service connected, or when it is not possible to separate the functional limitations of an injury and assign them to each part of the spine and one part is service connected.[39]

We have previously held that "*for rating purposes*, § 4.71a combines the thoracic and lumbar spines and provides criteria for rating disabilities of the 'thoracolumbar spine.'"[40] Appellant's position that service connection for his thoracic spine alone allows for consideration of any impairment caused by his non-service-connected lumbar spine disability conflates the issues of service connection and disability rating. He asks the Court to skip over establishing service connection for his lumbar spine and direct VA to compensate him for symptoms caused by a condition for which he has been denied service connection.[41] The "logically up-stream element of service-connectedness" is distinct from "the logically downstream element of compensation level."[42]

Appellant argues that the upstream element of service connection was satisfied as to both segments of the spine when service connection was granted for the thoracic spine.[43] He, however, ignores the fact that service connection was expressly denied for his lumbar spine disability and that he did not appeal that decision, making it final. Essentially, appellant is asking the Court to compensate him for symptoms for which service connection has not been established when he failed to challenge the establishment of service connection by abandoning an appeal of that issue.

Both parties place significant importance on the 2003 amendment to 38 C.F.R. § 4.71a and the General Rating Formula for Diseases and Injuries of the Spine. In the 2002 proposed changes that led to the amendment of the formula, VA proposed that "the general rating formula provide criteria for the cervical and thoracolumbar spinal segments only, excluding a separate set of criteria for the thoracic (or dorsal) segment of the spine."[44] VA stated that "[b]ecause the thoracic and lumbar spine segments *ordinarily move as a unit*, it is *clinically difficult* to separate the range of

---

[39] *See Mittleider v. West*, 11 Vet.App. 181, 182 (1998).

[40] *Cullen v. Shinseki*, 24 Vet.App. 74, 82 n.8 (2010) (emphasis added).

[41] *See D'Amico v. West*, 209 F.3d 1322, 1326 (Fed. Cir. 2000) (holding that service connection of a disability and degree of disability are separate elements of disability benefits).

[42] *Grantham v. Brown*, 114 F.3d 1156, 1158-59 (Fed. Cir. 1997).

[43] O.A. at 14:35-14:53; 40:17-41:00.

[44] 67 Fed. Reg. 56,509, 56,512 (Sept. 4, 2002).

movement of one from the other."[45] Appellant argues that this regulatory change radically altered the approach VA used to rate thoracic and lumbar spinal disabilities. He contends that the change shows that the Secretary intended for the thoracic and lumbar spine to constitute one disability for rating purposes, regardless of which is service connected.[46] Conversely, the Secretary contends that the wording in the Federal Register acknowledges that in most instances, the thoracic and lumbar spine will be considered together but leaves open the possibility that they could be separated, as in this case.[47]

We agree with the Secretary. In the Federal Register, VA acknowledged that the thoracic and lumbar spine move together and should generally be considered together for rating purposes because it is often "clinically difficult" to distinguish between the effects flowing from a thoracic spine disability versus one of the lumbar spine. But recognizing that something is "clinically difficult" does not mean it is impossible. Here, we have unchallenged medical evidence attributing appellant's functional impairment solely to his non-service-connected lumbar section of the spine. In this situation–one that perhaps will not be common–the medical evidence is sufficient to carry out the overall goal of the rating schedule to compensate for injuries that are "a result of or incident to military service."[48]

The 2003 amendment is also consistent with this Court's decision in *Mittleider*.[49] In that case, the Court held that "when it is not possible to separate the effects of the [service-connected condition and the non-service-connected condition], VA regulations . . . clearly dictate that such signs and symptoms be attributed to the service-connected condition."[50] The amendment to § 4.71a acknowledges that in most spinal cases, it would be difficult to separate what segment of the spine, the thoracic or lumbar, was the source of limitation of motion. Thus, in amending the DC, VA put *Mittleider* into effect by recognizing that it would often be "clinically difficult" to expect a medical professional to separate the limitations flowing from injuries to different portions of the spine. But there appeared to be no such clinical difficulties in appellant's case. Here, the May 2016 VA

---

[45] *Id.* (emphasis added).

[46] Appellant's Motion for Reconsideration at 7-8.

[47] O.A. at 26:45-28:00.

[48] 38 C.F.R. § 4.1.

[49] 11 Vet.App. at 182.

[50] *Id.*

examiner was able to clearly separate the functional limitations associated with appellant's service-connected thoracic spine condition and his non-service-connected lumbar spine condition.[51] And it bears repeating that appellant did not challenge the adequacy of this medical opinion either at the Board or before us. Thus, following the logic of *Mittleider* and the permissive language of the 2003 amendment, the Board was under no obligation to consider the effects of appellant's thoracic and lumbar spine disabilities together, and it was not error for the Board to rely on medical evidence that separated the two disabilities.

Appellant argues that to the extent there is ambiguity in the DC, it should be resolved in his favor. But we find no ambiguity in the DC when read in the regulatory context in which it appears: the general formula calls for the thoracic and lumbar spine to be rated together when both are service connected or when it is not possible to clinically distinguish between the effects of the two disabilities. Because the DC is not ambiguous, there is no reason to reach the pro-veteran canon.

Finally, the Court notes that appellant's proposed interpretation of the DC would lead to absurd results, something we must avoid when interpreting a statute or regulation.[52] To begin with, imagine a scenario in which a veteran is service connected for a thoracic spine condition but not a lumbar spine condition and all her functional limitations are attributed to the lumbar spine (and none are related to the thoracic spine). Appellant's interpretation of the DC would entitle this veteran to compensation for a condition that is not related to service. That makes no sense and would circumvent the meaning of § 4.1 and the regulatory framework governing VA benefits.[53] This is precisely the scenario presented by the facts currently before the Court and the outcome appellant asks us to reach. It simply cannot be. In addition, appellant's view would require us to completely ignore the unappealed VA determination that his lumbar spine condition is not related to service and medical evidence establishing that his functional limitations are related to that non-service-connected condition. We hesitate to adopt an interpretation of a regulation that would make us pretend such significant considerations do not exist.

---

[51] R. at 93.

[52] *See Atencio v. O'Rourke*, 30 Vet.App. 74, 83 (2018).

[53] *See* 38 C.F.R. § 4.1.

*D. Summary*

We hold that the General Rating Formula for Diseases and Injuries of the Spine and DC 5237 are not ambiguous. When read in the regulatory context that requires a disability to be service connected before it can be compensated through the rating schedule, it is clear that the "thoracolumbar" spine is rated together when both parts are service connected or the impairment caused by the two segments cannot be separated. This is not the case here. In appellant's case, service connection was not established for appellant's lumbar spine disability, and the evidence of record attributed his functional impairment, including limitation of motion, to the lumbar spine disability and not his service-connected thoracic spine disability. Thus, appellant has not carried his burden to show that the Board clearly erred in relying on that medical evidence to deny a higher disability rating for appellant's service-connected thoracic spine disability.[54]

## IV. CONCLUSION

After consideration of the parties' briefs, oral arguments, the record on appeal, and the governing law, the Court AFFIRMS the November 1, 2017, Board decision.

---

[54] *See Hilkert v. West*, 12 Vet.App. 145, 151 (1999) (en banc), *aff'd per curiam*, 232 F.3d 908 (Fed. Cir. 2000) (table).