# UNITED STATES COURT OF APPEALS FOR VETERANS CLAIMS

No. 19-6020

LEON WILSON, APPELLANT,

V.

DENIS MCDONOUGH,
SECRETARY OF VETERANS AFFAIRS, APPELLEE.

On Appeal from the Board of Veterans' Appeals

(Decided December 20, 2021)

*Katherine M. Ebbesson* and *Barton Stichman*, both of Washington, DC, for the appellant.

*Mark J. Hamel*, with whom *William A. Hudson, Jr.,* Principal Deputy General Counsel; *Mary Ann Flynn*, Chief Counsel; and *Kenneth A. Walsh*, Deputy Chief Counsel, all of Washington, D.C., were on the brief for the appellee.

Before PIETSCH, GREENBERG, and TOTH, *Judges*.

TOTH, *Judge*: Under Diagnostic Code 7101, a veteran is entitled to a minimum compensable rating for hypertension who has "a history of diastolic pressure predominantly 100 or more [and] requires continuous medication for control." 38 C.F.R. § 4.104, DC 7101 (2021). Relatedly, VA's *Adjudication Procedures Manual* (M21-1) provides that "if current predominant blood pressure readings are non-compensable, a 10 percent evaluation may be assigned if . . . continuous medication is required for blood pressure control, and . . . past diastolic pressure (before medication was prescribed) was predominantly 100 or greater." M21-1, pt. V, sbpt. iii, ch. 5 sec. 3.b.

Veteran Leon Wilson appeals a 2019 Board decision that denied a minimum compensable rating for his service-connected hypertension because the Board found that his diastolic blood pressure was not predominantly 100 or greater during the appeal period. The Board declined to address Mr. Wilson's blood pressure readings taken before the appeal period—specifically, those captured before he took medication to treat his hypertension. Mr. Wilson argues that the relevant historical blood pressure readings are those taken before he started using medication to control his hypertension and that the Board clearly erred in declining to address them. The Secretary counters

that the Board correctly declined to rely on pre-rating period blood pressure readings because this appeal involves an increased ratings claim.

The plain text of DC 7101 directs VA to consider historical, rather than current, blood pressure readings and that the relevant "historical blood pressure readings" are those taken before the veteran began medication. This interpretation is supported by both the text of the regulation and VA's internal guidance manual, the M21-1. Therefore, the Board clearly erred in declining to assess the veteran's pre-rating period blood pressure readings.

## I. BACKGROUND

Mr. Wilson was an Army National Guardsman. He had a period of active duty for training from March to August 1982; he also deployed from September 1990 to 1991 as part of Operation Desert Storm. During his second period of service, Mr. Wilson's blood pressure was measured seven times across several days beginning on July 3, 1991. Each blood pressure reading includes both a systolic reading—usually expressed as the top number—and a diastolic reading expressed as the bottom number. For purposes of this appeal, only Mr. Wilson's diastolic readings are relevant. His seven pre-diagnosis diastolic readings were 100, 90, 88, 116, 120, 118, 106, and 94. The readings averaged 101.16.[1] Based on those readings, the physician diagnosed Mr. Wilson with uncontrolled hypertension and dehydration and prescribed Procardia.

Mr. Wilson began his medication on July 4, and when his blood pressure was taken on July 5 his diastolic readings were 85 and 75. On July 8 and 9, Mr. Wilson's diastolic pressures were 80 and 90 respectively. He left service two months later and has taken blood pressure medication continuously since then, so there is no dispute that his hypertension is currently controlled by medication.

In 2003, Mr. Wilson was granted service connection for hypertension and was assigned a noncompensable (0%) rating. That decision became final and, in 2008, Mr. Wilson submitted a claim for an increased rating, which VA denied.[2] On appeal to this Court, he argued that DC 7101 required VA to consider only pre-medication blood pressure readings when determining whether

---

[1] All blood pressure readings in this opinion are provided in millimeters of mercury (mm/hg) format.

[2] Mr. Wilson's case also included claims related to a genitourinary disorder. The Board remanded these claims for further adjudication and, therefore, they are not currently before the Court. *See Breeden v. Principi*, 17 Vet.App. 475, 478 (2004) (per curiam order) (a Board remand is not a final decision and therefore does not confer jurisdiction over the matter on the Court).

he had a history of diastolic pressure predominantly over 100 and that his proposed interpretation was supported by the M21-1. Specifically, he cited to a section of the M21-1 that read: if "current predominant blood pressure readings are non-compensable, a 10 percent evaluation may be assigned if . . . continuous medication is required for blood pressure control, and . . . past diastolic pressure (before medication was prescribed) was predominantly 100 or greater." M21-1, pt. V, sbpt. iii, ch. 5 sec. 3.b.[3]

A 2018 memorandum decision remanded the case on the grounds that the Board failed to explain why it departed from the M21-1 provision. Even though the provision was not binding on it, the Board's failure to discuss the provision rendered its reasons or bases inadequate. In May 2019, the Board denied a compensable rating for hypertension; relevant to this appeal, it found that the evidence did not support that Mr. Wilson's diastolic pressure was predominantly 100 or more during the rating period—that is, since September 2007. The Board interpreted the M21-1 provision to apply only to the assignment of an initial rating for hypertension and found the provision irrelevant to Mr. Wilson's increased rating claim. It reasoned that "a current rating based on measurements taken in 1991 is manifestly inconsistent with establishing the degree of disability shown during the period of the appeal." R. at 11. The Board, therefore, focused its evaluation on the rating period beginning in September 2007.[4] It found that Mr. Wilson's blood pressure had been controlled with medication and that he did not have a history of diastolic pressure predominantly over 100 during the appeal period. It denied his claim for a rating greater than 0%. This appeal followed.

## II. ANALYSIS

The General Schedule of Ratings for the cardiovascular system provides three distinct avenues for veterans seeking compensation for service-connected hypertension—"[(1)] Diastolic pressure predominantly 100 or more, or; [(2)] systolic pressure predominantly 160 or more, or;

---

[3] The M21-1 section regarding hypertension ratings was previously located at M21-1, Part III, subpart iv, ch. 4. However, VA reorganized the M21-1 in 2019, including moving the hypertension section. For the purposes of this appeal, the contents of the M21-1 sections have remained the same despite moving location, but the Court refers to the current M21-1 provision in this opinion.

[4] The Board looked back to September 2007 because 38 C.F.R. § 3.4000(o)(2) provides that the effective date for increased rating claims can be no earlier than one year prior to the date of the application thereof.

[(3)] minimum evaluation for an individual with a history of diastolic pressure predominantly 100 or more who requires continuous medication for control." 38 C.F.R. § 4.104, DC 7101.

This case turns on the proper interpretation of the phrase "history of diastolic pressure over 100" within DC 7101. When interpreting a regulation, the Court begins with the language of the regulation. *Petitti v. McDonald*, 27 Vet.App. 415, 422 (2015). The Board and the Secretary have both taken the position that, because Mr. Wilson seeks an increased rating for hypertension, the diastolic readings taken during the appeal period serve as the appropriate measure of historical blood pressure. This interpretation, however, cannot be reconciled with the text and structure of DC 7101.

First, there is the use of the disjunctive "or" that signals that the criteria stand as independent avenues that a veteran may use to establish entitlement to the minimum compensable evaluation. *Loughrin v. United States*, 134 S. Ct. 2384, 2390 (2014) (recognizing the familiar canon of statutory construction in which terms connected by disjunctive "or" are "to be given separate meanings"). Thus, DC 7101 offers three distinct avenues for veterans to pursue: Veterans can either demonstrate current blood pressure readings—either systolic pressures predominantly 160 or above or diastolic pressure of 100 or greater—or, if veterans use medication to control their hypertension, historical blood pressure readings predominantly greater than 100.

Here, the Board's limited reading of DC 7101 renders one prong of the DC extraneous, as the historical reading becomes functionally meaningless towards establishing eligibility. To illustrate, if a veteran seeks an increased rating on the basis of current diastolic readings, he would support his claim with diastolic readings, predominantly over 100, within the appeal period. If we adopted the Secretary's proposed reading of "history of diastolic pressure" then a veteran, who controls his blood pressure with medication, would also have to show that he had diastolic pressure predominantly over 100 during the appeal period—effectively collapsing the third prong into the first. Under the Board's reading of DC 7101, there would only be two avenues to a compensable rating for hypertension: (1) systolic readings predominantly over 160 during the appeal period, and (2) diastolic readings predominantly over 100 during the appeal period. This reads out a viable path to eligibility and ignores the possibility that a veteran can establish *current* eligibility under DC 7101 by presenting readings from the past, before the blood pressure was controlled with medication.

4

Thus, the Board's rationale amounts to legal error as it fails to account for the plain language of DC 7101. *Williams v. Taylor*, 529 U.S. 362, 404 (2000) ("It is, however, a cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute.") (internal quotation omitted)

Further, the structure of DC 7101 clearly signals that VA intended to compensate veterans who do not have current readings establishing entitlement to a 10% rating if those veterans are using medication to control their blood pressure. In *McCarroll v. McDonald*, we noted that DC 7101 contemplates the ameliorative effects of medication and that a veteran can be entitled to a compensable rating even if he does not have current blood pressure readings above the statutory thresholds. 28 Vet.App. 267, 273 (2016). Because DC 7101 acknowledges that a veteran can control hypertension with medication, the most natural reading of the phrase "history of diastolic pressure of 100 or greater" is that it refers to blood pressure readings before such readings were subdued by medication.

The M21-1 confirms this. It explains that generally, "[service connection] for hypertensive vascular disease requires current blood pressure readings (obtained during the claim period)" demonstrating either diastolic blood pressure over 100 or systolic blood pressure over 160. M21-1, pt. V, sbpt. iii, ch. 5 sec. 3.b. However, the M21-1 carves out an exception reading "[c]urrent readings meeting the regulatory standards for [hypertension] *are not required* if the competent evidence shows a diagnosis of hypertension . . . currently controlled by (or asymptomatic with) medication, *and* a past competent diagnosis was made in service." *Id*. Further, when service connection is established even though "current readings do not meet the regulatory definitions" a 10% rating is warranted "if continuous medication is required for blood pressure control, and past diastolic pressure (before medication was prescribed) was predominantly 100 or greater." M21-1, pt. V, sbpt. iii, ch. 5 sec. 3.e. Thus, the M21-1 unambiguously states that pre-medication blood pressure readings stand as the appropriate data set when determining whether a veteran who controls hypertension with medication has a history of diastolic pressure predominantly over 100.

The Board correctly stated that, in deciding the effective date for increased rating claims, the relevant question is whether Mr. Wilson meets the criteria for a 10% rating under DC 7101 for the period beginning in September 2007. R. at 11; 38 C.F.R. § 3.400(o)(2). But the Board interpreted the phrase "history of diastolic pressure predominantly 100 or greater," as used in DC 7101, to require the veteran show that he had a history of diastolic pressure predominantly over

100 during the appeal period. The Board's interpretation of DC 7101 ignores that a veteran can be currently eligible on the basis of historical blood pressure readings. See *McCarroll*, 28 Vet.App. at 274 (relying on a veteran's pre-medication blood pressure readings to assess entitlement to compensation for hypertension). Thus, the Board should have considered the 1991 pre-medication blood pressure readings to determine whether Mr. Wilson has a history of diastolic pressure at 100 or above.

Finally, the Board also failed to provide a reasoned basis for departing from the M21-1's guidance. This Court's 2018 remand ordered the Board to discuss the relevance of the operative M21-1 provision and either follow that guidance or provide a rationale for not doing so. The Board addressed the M21-1 but declined to follow it, reasoning that the provision cited in the Court's remand order only concerned the appropriate readings to establish an *initial* diagnosis of, and rating for, hypertension. R. at 10 ("The instructions cited [by the veteran] pertain to a history [of] blood pressure readings prior to the evaluation of hypertension and its initial rating."). The Board complied with the Court's remand order by providing a statement of reasons or bases for its decision not to apply the relevant M21-1 section, so now the Court reviews that statement to ensure that it is adequate.

Two recent cases discuss the role of relevant guidance documents such as the M21-1 in the Board's adjudications. First, *Overton v. Wilkie*, 30 Vet.App. 257, 264 (2018), established that the Board cannot resolve an issue adversely to a veteran merely by citing a guidance provision but must provide an independent rationale for its decision. *Healey v. McDonough*, 33 Vet.App. 312 (2021), addressed the opposite situation: where a Board decision failed to discuss a relevant (usually favorable) guidance provision. *Healey* established that the Board must address guidance (e.g., manual) provisions when they are relevant and, as part of its reasons or bases requirement, provide an independent assessment of the issue addressed by the manual provision. *Id.* at 321. Thus, where a guidance manual provision is relevant to a veteran's appeal, the Board must discuss such provision as part of its analysis, even as it remains free to determine whether or how to apply such provision. *Id.* Taken together, *Overton* and *Healey* establish that the Board can neither merely invoke nor ignore a relevant guidance provision to support its decision but must provide an independent rationale relating its decision to the relevant guidance document.

Here, we evaluate whether, in departing from the M21-1's guidance, the Board provided a reasoned basis insofar as it is (1) consistent with governing law and regulations and (2) supported

6

by a plausible basis in the record. On remand, the Board asserted that the M21-1 language was irrelevant to Mr. Wilson's increased rating claim as it applied only to claims for initial ratings.

We have already noted that the Board's reasoning was erroneous insofar as it cannot be reconciled with the plain language of DC 7101. This reason alone is enough to show that the Board failed to provide a reasoned basis for departing from the M-21-1. We must also note, however, that the Board's reasoning stands in express contrast to the specific language of the M21-1, which unambiguously directs VA to consider blood pressure readings taken from before the veteran started using medication. For starters, it must be noted that the term "initial" appears nowhere in the relevant provision, which bears no hint that DC 7101 is intended to apply only to initial ratings as opposed to increased rating claims. More importantly, the relevant provision states that when service connection is established through historical readings, a 10% rating is warranted when "predominant diastolic pressure was 100 or more before symptoms were controlled with medication as provided in 38 C.F.R. § 4.104, DC 7101." *Id*. And, in a later subsection entitled "Predominant Blood Pressure in Evaluations of Hypertension," it again plainly states that "a 10% evaluation may be assigned if continuous medication is required for blood pressure control, and past diastolic pressure (before medication was prescribed) was predominantly 100 or greater." M21-1, Part V, sbpt. iii, ch. 5.3.e.

Given the structure and content of the relevant provision, there is no support for the Board's assertion that the M21-1 does not provide any guidance for assigning an increased rating under DC 7101. The Board's explanation is lacking and directly contradicted by the relevant text and therefore its decision to depart from the M21-1 is not supported by a reasoned basis.

Because the Board erroneously misinterpreted DC 7101 and did not analyze the 1991 blood pressure readings from before Mr. Wilson began taking his medication, remand is appropriate. *See Cantrell v. Shulkin*, 28 Vet.App. 382, 392 (2017) (citing *Tucker v. West*, 11 Vet.App. 369, 374 (1998)) (remand is the appropriate remedy when the Board misapplies the law). The Court declines to reverse the Board's ultimate finding—that a 10% rating for hypertension is not warranted—because the Board did not make a finding as to whether the 1991 pre-medication blood pressure readings are predominantly 100 or greater. The Court is foreclosed from making factual determination in the first instance and, instead, is limited to reviewing the Board's findings. *Andrews v. McDonough*, 34 Vet.App. 216, 222 (2021).

## III. CONCLUSION

The Board's May 9, 2019, decision is VACATED and the matter is REMANDED for the Board to determine whether Mr. Wilson's diastolic blood pressure was predominantly over 100 before he began taking medication for hypertension.